**In the Matter of CREED BROS., INC., Bankrupt.**

**In the Matter of TWIN LAKES LUMBER CO., INC., Bankrupt.**

**Bankruptcy Nos. 77 B 2120, 77 B 2130.**

United States Bankruptcy Court, S.D. New York.

March 3, 1987.

Anderson Russell Kill & Olick, P.C., New York City (Roy Babitt, of counsel), for Creditors' Committee.

Barr and Faerber, Spring Valley, N.Y. (Elizabeth Haas, of counsel), for trustee.

Levine & Montana, Peekskill, N.Y. (Seymour R. Levine, of counsel), for Emil Landau.

## DECISION ON ORDER TO SHOW CAUSE SEEKING AN ORDER CLARIFYING AN ORDER OF DECEMBER 22, 1986.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Creditors' Committee in the above-captioned matters has moved for an order pursuant to Section 2(a)(15) of the former Bankruptcy Act "clarifying" this court's order dated December 22, 1986, which in relevant part, directs the trustee to collect the sum of $9656.17 as the expenses payable to the Referee's Salary and Expense Fund ("Referee Fees") from the remaining proceeds in these estates. The Chairman of the Creditors' Committee reasons that all secured creditors who benefitted from the trustee's liquidation of the assets in these estates should bear a *pro rata* portion of the Referee Fees.

## FACTUAL BACKGROUND

On August 8, 1977 and August 10, 1977, Creed Bros., Inc. ("Creed") and Twin Lakes Lumber Co., Inc. ("Twin Lakes") filed petitions with this court under Chapter XI of the former Bankruptcy Act. By order dated October 3, 1977, this court designated an official Creditors' Committee in each case to represent the interests of the general unsecured creditors. Thereafter, David Hallock was appointed Chairman of each Committee. At the time of the filing of the petitions for arrangement, the aggregate claims of the creditors in both cases was $367,174.39.

In August, 1978, this court entered an order consolidating these cases. By order of this court entered June 12, 1979, a plan of arrangement (the "Plan") was confirmed. Pursuant to Article III of the Plan and the order confirming it, this court retained jurisdiction of these cases. Under the Plan, the then Chapter XI debtors granted to Hallock, as trustee for the creditors, security interests and liens ("Security Interests") to secure the claims of the general creditor body in and to the real property, machinery and equipment, inventory and accounts receivable of the estate. These Security Interests were subordinate to certain existing mortgages, other security interests and liens. Each Security Interest was thereafter properly perfected.

Creed and Twin Lakes experienced increasingly serious financial difficulties in late 1981. In February, 1982, the Creditors' Committee, with the then debtors' consent, made application to convert these cases for liquidation under the Bankruptcy Act. After notice and a hearing, this court adjudged Creed and Twin Lakes as bankrupts and appointed Harvey S. Barr to serve as trustee of the bankruptcy estates. In 1984 and 1985 several interim payments were made by the trustee to creditors which aggregated $41,230.77.

In December, 1986, the trustee moved for an order determining the final fee allowances and commissions with respect to these consolidated cases. The trustee's application was based upon a written stipulation signed by David Hallock, Chairman of the Creditors' Committee, Harvey S. Barr, Esq., as trustee for the bankrupts, Barr and Faerber, Esqs., as attorneys for the trustee and Anderson, Russell, Kill & Olick, P.C., as attorneys for the Creditors' Committee, who are now the movants in this matter.

The stipulation, which was filed with this court on December 9, 1986, recites that the trustee sold all of the assets of the debtors and recovered the sum of $398,359.14. The stipulation also states that distributions were made to the secured mortgagees, with the result that there remained in the trustee's possession the sum of $87,379.39. The signatories also gave their consent to an award of fees and disbursements requested by counsel for the secured mortgagees, counsel for the trustee in bankruptcy and the statutory commissions computed by the trustee in bankruptcy. The signatories further stipulated:

> WHEREAS, it appears that *after* the payment of administration *expense claims,* all sums remaining in the estate would be distributed to David Hallock as Chairman of the Creditors' Committee, a secured party, . . . .

(Emphasis added).

On December 22, 1986, the court entered an order which reflected the court's determination of the fees, commissions and disbursements sought in these consolidated cases. Pursuant to the stipulation of the parties which was filed on December 9, 1986, the court ordered:

> that all funds remaining in this estate be delivered to Anderson, Russell, Kill & Olick, Esqs., Attorneys for David Hallock, as Chairman of the Creditors' Committee, for the distribution in accordance with the security documents filed in this proceeding.

However, the court also provided in the December 22, 1986 order for the payment of Referee Fees in the amount of $9,656.17. This amount was calculated on the amount of assets in these consolidated estates which were liquidated and distributed by the trustee in bankruptcy.

There was no appeal filed with respect to the December 22, 1986 order. The Creditors' Committee moved by order to show cause dated February 9, 1987, to "clarify" the order. The Creditors' Committee now objects to the fact that the December 22, 1986 order, which was based upon the stipulation signed by all the parties, including the Creditors' Committee, places the entire burden of the Referee Fees on the remaining funds distributed through the Creditors' Committee. The Creditors' Committee maintains that the senior secured mortgagees should bear a *pro rata* portion of the Referee's Fees because they benefitted from the trustee's liquidation efforts.

## DISCUSSION

■ There is no question that no notice of appeal was ever filed with respect to this court's December 22, 1986 order within the ten-day period from its entry, as specified under Bankruptcy Rule 8002(a). Absent an appeal or a motion to extend the time for appeal, the order became final and the trustee in bankruptcy was obliged to pay first the specified administrative expenses, including the sum of $9,656.17 for Referee's Fees, after which he was required to deliver "all funds remaining in the estate" to the attorneys for the Creditors' Committee for distribution pursuant to the stipulation filed on December 9, 1986. The sum of $9,656.17 was computed in accordance with Section 40(c)(2)(a) of the former Bankruptcy Act, 11 U.S.C. § 68(c)(2)(a), which provided that payment to the Referee's Salary and Expense Fund was to be computed on the "net proceeds realized upon liquidation of an estate . . .".

The "clarification" which the Creditors' Committee seeks is actually a motion for a modification of the December 22, 1986 order. The Creditors' Committee requests "that this Court *modify* the Order by (1) directing that the Committee's administra-

tive expense payment under § 40(c)(2) of the Bankruptcy Act be fixed at $2124.36 ... (3) directing that the Trustee collect $7531,81 as an administrative expense payment under § 40(c)(2) in *pro rata* shares from the other secured creditors to whom he distributed proceeds derived from his liquidation of estate assets ...". (Emphasis added).

Relief from a judgment or order is governed by Bankruptcy Rule 9024, which makes Rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy cases. This rule, which delineates the grounds on which a court, in its discretion, may rescind or amend a final judgment or order, provides in relevant part as follows:

> On Motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party, (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, ...; or (6) any other reason justifying relief from the operation of the judgment.

As stated recently by the Second Circuit Court of Appeals:

> The Rule may not be used as a substitute for a timely appeal. Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.

*Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986). (Citations omitted).

█ Subdivisions (1) and (6) of Rule 60(b) are the only apparent grounds under which the Creditors' Committee might seek relief. Subdivision (1) authorizes relief for mistake, inadvertence, surprise, or excusable neglect. That this court *sua sponte* inserted in the December 22, 1986 order that the trustee in bankruptcy was directed first to pay to the Clerk of the Court the sum of $9,656.17, representing administration expenses, was certainly no mistake or inadvertence. This payment was required by

law as expressed in Section 40(c)(2) of the former Bankruptcy Act. This provision should not have come as a surprise to the Creditors' Committee, in view of the fact that their Chairman and their attorneys signed the stipulation which was previously filed with the court on December 9, 1986 which provides "that after the payment of the administration expenses claims ..." (which in these cases included the Referees' Fees of $9,656.17) ... "all sums *remaining* in the estate would be distributed to David Hallock as Chairman of the Creditors' Committee ...". (Emphasis added). This is precisely what the December 22, 1986 order provided; it tracked the stipulation of the parties. Manifestly, the Creditors' Committee and their counsel may not look to subsection (1) of Rule 60(b) because the Second Circuit in the *Nemaizer* case also said:

> But we have consistently declined to relieve a client under subsection (1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court....
>
> \*　\*　\*　\*　\*　\*
>
> When the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits, however, the burden to obtain Rule 60(b) relief is heavier....

*Nemaizer v. Baker*, 793 F.2d at 62 and 63; *In re Chipwich, Inc.*, 64 B.R. 670, 675 (Bankr.S.D.N.Y.1986).

█ The other possible ground upon which the Creditors' Committee might rely under Rule 60(b) is subsection (6), which permits relief for "any other reason justifying relief from the operation of the judgment." This subsection is available only when there are extraordinary circumstances justifying relief. *In re Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir.1981). This is a catch-all provision and this subsection may apply when no other subsection is available, so that grounds for relief may not be a claimed mistake, inadvertence, surprise or exusable neglect. *Nemaizer v.*

*Baker,* 793 F.2d at 63. There do not appear to be any extraordinary circumstances to support the Creditors' Committee's motion. Their basic premise is that the secured mortgagees benefitted from the trustee's liquidation and, therefore, they should assume a *pro rata* portion of the Referee's Fees, which constitute an administration expense. This position is inconsistent with their treatment of other administration expenses. Concededly the Creditors' Committee did not claim that any portion of the trustee's statutory commissions should also be pro rated on the basis of the assets liquidated by him. Pursuant to the stipulation filed on December 9, 1986, all of the trustee's statutory commissions were to be paid first from the assets on hand after distributions had been made to the secured mortgagees, following which the remaining proceeds were distributed to the attorneys for the Creditors' Committee, in accordance with the stipulation and subsequent order dated December 22, 1986. Similarly, legal fees were paid to counsel for the trustee, together with reimbursement for actual expenses incurred, without any *pro rata* charge to the secured mortgagees, notwithstanding that the trustee's counsel provided legal services in connection with the liquidation of all of the assets including those of the secured mortgagees.

Manifestly, the stipulation which the parties signed expressly provided for the Creditors' Committee to receive the remaining balance on hand after the secured mortgagees were paid in full and after all administration expenses were paid from the proceeds in the possession of the trustee in bankruptcy. There was no indication that the Creditors' Committee expected that any portion of the administration expenses would be pro rated when they signed the stipulation. Thus, there do not appear to exist any extraordinary circumstances which would justify pro rating the Referee's Fees, which is only one of the various items that comprised the administration expenses in these consolidated cases.

The Creditors' Committee's motion that the secured mortgagees benefitted from the trustee's liquidation because he saved them the cost of foreclosing on their collateral, does not meet the facts in these consolidated cases. The secured mortgages contained clauses to the effect that the debtors shall pay to the mortgagees on demand any and all expenses and legal fees incurred or paid by the mortgagees in protecting or enforcing their rights under the mortgages. Thus, the bankrupts' estates would have been responsible for any foreclosure costs had the mortgagees been permitted to commence foreclosure actions in state court. The mortgagees, who were admittedly over-secured, would have recovered the full amounts due them from the bankrupts in state court and there is no reason why they would receive less in this court merely because all of the parties permitted the trustee to liquidate the estates. Thus, the Creditors' Committee's position that the secured mortgagees benefitted from the trustee's liquidation is undercut by the fact that the secured mortgagees could look to the bankrupts' estates for the recovery of their foreclosure costs. This point was noted in a case under the current Bankruptcy Code in *In re Codesco,* 18 B.R. 225, 229, 8 B.C.D. 1089, 1091 (Bankr.S.D.N.Y.1982), where this court said:

> Where the proceeds from a trustee's sale of encumbered property are sufficient to cover the actual costs associated with the sale and to pay the secured claim in full, it has been held that Code § 506(c) does not authorize charging the encumbered assets with foreclosure costs because the lienholder received no benefit and would have realized full satisfaction of its claim without the intervention of the trustee.

In light of the foregoing, there are no unusual circumstances within the meaning of Rule 60(b)(6) which would entitle the Creditors' Committee to charge a portion of the Referee's Fees to the secured mortgagees. *See General Electric Credit Corporation v. Peltz (In re Flagstaff Foodservice Corp.),* 762 F.2d 10, 12 (2d Cir.1985) where the court said:

> Implied consent, as distinguished from actual consent, generally is limited to

**588**

cases where the creditor has in some way caused the additional expense.

*See also General Electric Credit Corporation v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 76–77 (2d Cir.1984).

### CONCLUSIONS OF LAW

1. The Creditors' Committee has failed to sustain its burden of proof to support its motion for relief from the court's order dated December 22, 1986.

2. The Creditors' Committee's motion for an order clarifying this court's order dated December 22, 1986, so that the Referee's Salary and Expense Fund expense should be pro rated between the secured mortgagees and the Creditors' Committee, is denied.

SETTLE ORDER on notice.