**In re Gene A. REBEOR, Debtor.**

**Bankruptcy No. 87–00952.**

United States Bankruptcy Court,
N.D. New York.

June 9, 1988.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y. (Jeffrey A. Dove, of counsel), for Fulton Typewriter.

James D. Selbach, Syracuse, N.Y., for debtor.

Warren V. Blasland, Syracuse, N.Y., Chapter 13 Trustee.

Lee Woodard, Syracuse, N.Y., Chapter 7 Trustee.

Jerome A. Mirabito, Fulton, N.Y., for Nestles Employees Federal Credit Union.

Hancock & Estabrook, Syracuse, N.Y. (Stephen A. Donato, of counsel), for Marine Midland Bank.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This matter comes before the Court on the motion of Fulton Typewriter Store, Inc. ("FTS") for reconsideration and amendment of or relief from the Court's Order dismissing the bankruptcy case of Gene A. Rebeor, f/d/b/a Radisson Sun Studio, an officer of Raddison Sun Studio, Inc., Sunsations Ltd. and Fulton Typewriter Store, Inc., A Partner of Royal Limousine ("Debtor"), pursuant to Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."). Oral argument was heard on April 19, 1988 in Syracuse, New York and the Court gave the parties until May 6, 1988 to submit memoranda of law, after which the matter was submitted for decision.

FACTS

On July 6, 1987, Debtor filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code"). In the Statement of Affairs For Debtor Engaged In Business, he indicated that he has been engaged in a tanning salon business since October 1984 and in the preceding six years also carried on business under FTS and Royal Limousine. He also indicated in the same statement at item 21(b) that he "presently has dispute with Fulton Typewriter, Inc." (sic).

Accompanying the petition were schedules listing $259,313.74 in debt and $300,740.00 in property. FTS was not listed as a creditor yet on August 12, 1987 it filed two proofs of claim: (1) $40,032.51 based on "monies embezzled from corporate accounts by Debtor and for charges to corporate accounts for personal expenses" and (2) a "contingent" $2,947.82 for "charges made to FTS at various businesses by Debtor for nonbusiness related purposes, plus penalty and interest accruing on corporate tax obligation." [1]

Debtor also filed a current schedule disclosing monthly income of $5450.00 from the operation of a business and rental property and $2770.00 of monthly expenses. His accompanying plan proposed monthly payments to the Trustee of $2450.00 for sixty months, which included full payment in deferred cash payments on all priority claims under Code § 507, the retention of liens by holders of allowed secured claims until payment at specified interest rates, 100% payment on allowed unsecured claims, the assumption of the unexpired lease with Raddison Realty Professional Building and the curing of mortgage arrears with Fulton Savings Bank ("FSB"). At an adjourned confirmation hearing on September 1, 1987, the Court heard the objection of Marine Midland Bank, N.A. ("Marine"), a secured creditor, pursuant to Code §§ 1325(a)((5) and 506(b). The Court then orally confirmed the amended plan with modifications agreed upon by both the Debtor and Marine.[2]

On October 5, 1987, the Chapter 13 Trustee, Warren V. Blasland, Esq. ("Blasland"), filed a motion to dismiss or convert the case pursuant to Code § 1307(c) for "material default by the Debtor" in making plan payments. A hearing on this motion was held on November 24, 1987 where Marine, FSB and FTS appeared in support thereof. By Order dated December 3, 1987, the Court conditionally granted the conversion of the Debtor's Chapter 13 case to Chapter 7 unless he filed a further amended plan and motion for approval thereof within thirty days from the date of entry of the Order. Under the terms of this conditional Order, conversion was deemed to be automatic in the event of the Debtor's noncompliance.

Pursuant to the December 3, 1987 Order the Debtor filed a first amended plan on December 23, 1987. He proposed reduced

---

1. By Order entered March 7, 1988, the Court denied Debtor's motion to disallow both claims based upon his failure to meet his burden of proof.

2. There is no entry in the case docket of a signed written order of confirmation and the record does not reveal the submittal of any such order or a related amended plan.

monthly payments of $1200.00 to the Trustee for sixty months, full payment of Code § 507 priority claims in deferred cash payments, the retaining of liens by holders of allowed secured claims until payment at specified interest rates, a payment of fifty-four percent on allowed unsecured claims, the same lease assumed and pre-petition arrears paid by the trustee, the sale of two automobiles (a Jaguar and a Chevrolet Corvette) from which the proceeds, after the payment of the attached liens, were to be applied toward two mortgage arrears with the remaining arrears to be paid by the trustee under the plan and a future objection to the FTS' two claims.

A confirmation hearing on this first amended plan was held on January 19, 1988. FSB raised an objection by letter dated January 6, 1988 and the hearing was adjourned to allow the Debtor to file a second amended plan by February 19, 1988. In the interim, Marine filed a motion on February 1, 1988 to dismiss or convert the Chapter 13 case for failure to make timely payments under Code §§ 1326 and 1327 or, in the alternative, to modify the automatic stay and order the Trustee to abandon its collateral, pursuant to Code §§ 1307(c), 362(d)(1) and 554(d), respectively.

A hearing on Marine's motion was conducted on February 9, 1988 with the Court denying the motion without prejudice and again directing the Debtor to file the second amended plan by February 19, 1988, as well as operating reports for the previous five months, by February 23, 1988. By Order dated February 17, 1988 and entered February 18, 1988, the Court memorialized the oral ruling of February 9, 1988. This Order required the filing of the second amended plan by February 19, 1988 and the filing of operating reports from October 1987 through February 1988 "in a form substantially similar to those required of Chapter 11 debtors" by February 23, 1988. It further provided that in the event of the Debtor's noncompliance, his case would be immediately converted to a Chapter 7 case without further application to the Court.

On February 17, 1988, the Debtor filed a "Modified Chapter 13 Plan" which provided for interim monthly payments of $600.00 until the Debtor could sell the Baldwinsville and Central Square real properties and the two automobiles. Proceeds would then provide payment in full for holders of allowed secured and unsecured claims and the Code § 507 priority claims. The amount of the FTS claims were to be held in escrow, pending the Court's determination of their allowance.

Debtor also filed an operating statement with a performance graph, a detail general ledger and a journal entry/check register for the period April through September 30, 1987, for Sunsations Ltd., operating at 465 South Salina Street in Syracuse, New York. For the "current month" (unidentified), on sales of $29,597.28, after a reduction for "cost of sales", there was a loss of $1,956.67. The nine months to date reflected a loss of $3,936.95 on total sales of $46,094.21. The operating expenses were broken down into twenty-five categories ranging from supplies to rent to advertising to miscellaneous. More than a third went into "Outside Expenses", itemized in the detail general ledger as being primarily comprised of payments to one individual. Included for the same corporation was an "Interim Profit–Loss Statement" for October 1, 1987 to January 31, 1988 reflecting a net loss of $3,364.00 on sales of $15,986.50.

Debtor also submitted an "Interim Profit–Loss Statement" for Radisson Sun Studio, Inc. at 8282 Willet Parkway in Baldwinsville, New York for the period of August 1 through January 31, 1988 and disclosing a net loss of $2,823.13 on sales of $10,820.90. Additionally, he attached copies of two separate "exclusive right to sell" Multiple Listing-approved agreements, each bearing the signatures of Debtor and a Nancy Frow, of Homes Limited. One agreement, dated February 2, 1988, concerned the exclusive listing of the Central Square property at a price of $179,900 until June 2, 1988. The second agreement, dated February 3, 1988 with an expiration date of June 3, 1988, involved property at 3172 Burrwood Drive, Baldwinsville, at a price of $86,000.00. In addition, Debtor attached a copy of two identical "proofs of listing" through a publisher named "Admax", bear-

ing illegible identification information, presumably relating to the proposed sale of the Jaguar and Chevrolet Corvette.

A hearing on confirmation of the "Modified Chapter 13 Plan" was conducted on the Court's morning motion calendar in Syracuse, New York on March 15, 1988. Marine, FSB, FTS and Nestles Employees Federal Credit Union ("Nestles"), also a secured creditor, filed objections to the confirmation based, in pertinent part, on the current status of the Debtor's Chapter 13 case due to the alleged incompleteness of the operating reports submitted and hence noncompliance with the Court's Order dated February 17, 1988, or that the plan was not feasible and the Debtor was ineligible to be a Chapter 13 debtor since he did not have regular income. Both Marine and FTS also requested immediate conversion of the case to Chapter 7.

After hearing argument, the Court issued an oral order from the bench converting the case from Chapter 13 to Chapter 7 as of that date due to the Debtor's failure to comply with the Order dated February 17, 1988 and entered February 18, 1988. The Court directed the objecting creditors to submit a proposed written order of conversion.

On the afternoon of March 15, 1988, Debtor's counsel appeared before the Court *ex parte in camera* with Debtor's affidavit requesting the dismissal of Debtor's case pursuant to Code § 1307(b). Thereafter, Debtor voluntarily submitted a memorandum of law on March 17, 1988 supporting his position that he had an absolute right to dismiss his Chapter 13 case pursuant to Code § 1307(b), particularly in light of the Court's oral order of conversion verbalized at the morning hearing. On March 17, 1988, the Court signed an Order dismissing the Debtor's Chapter 13 case pursuant to Code § 1307(b), and it was entered on the docket by the Clerk on March 18, 1988.

Notice of said dismissal was mailed by the Clerk's Office to all the parties in interest, including FTS, on March 28, 1988.

On April 8, 1988, FTS filed the instant motion. It was joined at the hearing on April 19, 1988 by Nestle, FSB, Marine, the Chapter 13 Trustee, Blasland, the interim Chapter 7 Trustee, Lee Woodard, Esq., and the Debtor.

## ARGUMENTS

While FTS captions its Motion under Rules 59(e) and 60 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), as incorporated by Fed.R.Bankr.P. 9023 and 9024, the motion appears to rely primarily on Rule 60(b) in conceding, as it does, that a motion under Rule 59(e) must be served no later than ten days after entry of the judgment and that it was unable to do so here. It asserts that "[b]ecause the Debtor's 'application' was made and the Order entered ex parte, and due to the delay by the Clerk's Office in serving notice of entry of the Order, FTS had no notice, actual or constructive, of the entry of the Order or even of the existence of the Order until more than ten days after entry of the Order." Motion For Reconsideration And Amendment Of Or Relief From Prior Order Pursuant to Rules 9023 and 9024 of Bankruptcy Procedure, para. 15 (Mar. 31, 1988) ("FTS Motion").

FTS focuses on the first, third and sixth categories in Fed.R.Civ.P. 60(b): mistake; fraud, misrepresentation or other misconduct of an adverse party; and "for any other reason justifying relief from the operation of the judgment." It claims four grounds for the Court's "mistake" in ordering dismissal: a) the February 17, 1988 Order had already converted the case to Chapter 7; b) if the February 17, 1988 Order did not convert, the Debtor had no Chapter 13 case to dismiss by virtue of the Court's verbal Order of conversion on March 15, 1988; c) the written requirement of Fed.R.Bankr.P. 9021 applies only to judgments and not orders; and d) assuming the oral order of conversion was not effective, Debtor lost his absolute right to dismiss under Code § 1307(b) due to prior motions to convert and his bad faith throughout the proceeding.

FTS also alleges that Debtor's counsel misled the Court in his memorandum of law filed March 17, 1988 by failing to disclose the existence of contrary authority

with regard to an oral order's effectiveness upon utterance and the lack of an absolute right to dismiss under Code § 1307(b). It also maintains that because the Debtor's memorandum of law supporting the Order of Dismissal was unsigned by the attorney of record, as required by Fed.R.Bankr.P. 9011, it should have been stricken and is of no effect and should not have been relied upon by the Court.

FTS further claims that it was deprived of the opportunity to be heard on the motion to dismiss or to timely appeal the resulting Order of Dismissal by Debtor's counsel's failure to advise the parties in interest of the dismissal, as it had indicated to the Court it would do. It points to the inequity of allowing the Debtor to dismiss his case and avoid this Court's jurisdiction over his assets where he has repeatedly failed to comply with Chapter 13 provisions.

In opposition, Debtor's counsel claims that he complied with the Court's oral ruling on February 9, 1988 by filing a plan and operating reports on February 17, three days prior to actually receiving the related signed Order. He maintained that his comprehension of the February 9 hearing was that Debtor had to file business operating reports for the last five months and assumed this was to extend to the end of January 1988 since any figures regarding February would be impossible to set out until the end of that month. He also stated that he thought that these financial reports related solely to the Debtor's sun tanning businesses.

Debtor's attorney further asserted that the Court indicated at the same hearing that it would accept operating reports prepared by the Debtor and "no discussion was had as to the exact form that these operating reports were to take." Affidavit of James F. Selbach, Esq., para. 4 (Apr. 14, 1988). He stated that had he been given the chance to object to the language in the Order submitted by Marine and to its inclusion of the month of February, he would have done so. In an accompanying memorandum of law, Debtor's attorney rebutted each of FTS' allegations.

The Debtor similarly responded to FTS's allegations and stated that he submitted, to the best of his ability, all available financial reports concerning the two sun tanning businesses he operated through Raddison Sun Studio, Inc. and Sunsations, Ltd. He further asserted that all other financial transactions and income relating to property he owned were disclosed either in the reports filed on February 17, 1988 or in his Chapter 13 schedules. *See* Affidavit of Gene A. Rebeor (Apr. 12, 1988).

## ISSUE

I. Did the operating reports submitted by the Debtor comply with the Court's Order dated February 17, 1988 and entered February 18, 1988 so as to avert its conditional conversion of his Chapter 13 case to Chapter 7?

II. If there was compliance with this Order then,

(a) was the Court's oral order of conversion to Chapter 7 effective on the ruling from the bench on March 15, 1988, rendering Code § 1307 unavailable to the Debtor; or, if not,

(b) if the Debtor is eligible for Chapter 13 relief, does Code § 1307(b) entitle him to an absolute right of dismissal?

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(2)(A), (L) and (O). The following is governed by Fed.R. Bankr.P. 7052, 9014, 9023 and 9024.

## DISCUSSION

I. It appears that the operating reports submitted and filed by the Debtor on February 17, 1988 did not comply with the Order dated February 17, 1988 notwithstanding the fact that the written Order apparently did not accurately reflect what transpired at the hearing on February 9, 1988. At that hearing, there was no dialogue concerning the form of the operating reports having to be "substantially similar to those required of Chapter 11 debtors" or that the five months had to encompass the

months of October, November and December 1987, and January and February 1988, as set out in the written order submitted by Marine. Rather, the Court directed the Debtor to submit "reconstructed operating reports" for the "past five months" with "some kind of figures put together either by an accountant or by Mr. Rebeor himself, as long as substantiated by the books" to demonstrate to the creditors his inability to fund a plan based on present income and expenses without selling some of his assets. The Court was concerned with where the money, if any, was going.

While well taken, Debtor's point in questioning his ability to comply with an Order he received several days after he submitted the related documents is academic, for the Court finds that Debtor failed to file operating reports as directed either at the hearing or in the Order dated February 17, 1988 and entered on February 18, 1988. While the Court does find that the five month period was satisfied by the reports' span of the periods of April to September 30, 1987, October 1, 1987 through January 31, 1988 and August 1, 1987 through January 31, 1988, none of the reports submitted make any reference to the rental income the Debtor admitted to receiving from one of his properties, presumably located in Central Square, at the hearing on February 9, 1988. The reports also appear to only cover two of the three sun tanning salon operations operated by two corporations in the relevant five month period: one at the Hotel Syracuse and the other in Baldwinsville.[3] There is no mention of the business in Fulton, New York which, according to

the Debtor, he still operates. Affidavit of Gene A. Rebeor, para. 4 (Apr. 12, 1988).

While Debtor listed $1100.00 of monthly rental income in his original budget, the Court specifically directed him to set out all sources of income and expenses in the operating reports. He cannot rely on the budget filed with his petition on July 7, 1987 since the record consistently casts doubt on its accuracy, especially with respect to the $2680.00 of disposable income it reflected. For example, Debtor was unable to make the monthly payments of $2450.00 under his first plan, which accompanied this budget, and admitted to not having the sufficient funds. In fact, each of the two plans he subsequently submitted, with monthly payments of $1200.00 and $600.00, respectively, appear unfeasible given the losses indicated by the submitted operating reports and Debtor's own admission at the March 15, 1988 hearing that he could not fund a plan without selling his real property and cars.[4] Additionally, Debtor's counsel, in the course of oral argument at the hearing on February 9, 1988, acknowledged the need for an amended budget in mentioning a request made for one "the week before".

█ But finding that the Debtor did not comply with the Court's Order dated February 17, 1988 does not dispose of his debtor status. The Order was self-effectuating on its face in providing that "the Debtor's case will be immediately converted to a Chapter 7 case without further application to the Court." However, the Court concludes that because a real question existed as to the Debtor's compliance with the operating report requirement, it was incum-

---

3. According to the Debtor, prior to the Court's Order dated January 6, 1988 granting the motion of Radisson Realty Professional Building to lift the stay on the location in Baldwinsville, he operated three sun tanning businesses through two New York corporations of which he was a stockholder and officer: Sunsations, Ltd. operated one salon out of the Hotel Syracuse, Syracuse and Raddison Sun Studio, Inc. operated two salons at 118½ Cayuga Street, Fulton and 8282 Willett Parkway, Baldwinsville. Affidavit of Gene A. Rebeor, para. 4 (April 12, 1988). He expressed hope in opening a third sun tanning salon in Central Square "but no business has ever been transacted at this location." *Id.*

The financial statement of the Radisson Sun Studio, Inc. appears to refer solely to the Baldwinsville operation, bearing that address alone.

4. The Court notes that due to the absence of a signed confirmation order and a corresponding entry into the case docket, pursuant to the conditional oral order of conversion on September 1, 1987, there has never been a confirmed plan in Debtor's Chapter 13 case. *See infra* at II(a). Consequently, the second and third plans he submitted are governed by Code § 1323, not Code § 1329.

bent upon the movant-creditors, who have maintained an active presence throughout this hotly contested bankruptcy proceeding, to seek such a determination upon application to the Court. An evidentiary hearing would have been conducted which, upon the appropriate ruling by the Court, would *then* have triggered the self-effectuating conversion of the Order.

Because none of this occurred *prior* to the confirmation hearing conducted on March 15, 1988 on the second amended plan, the case did not convert to Chapter 7 automatically. This conclusion is bolstered by the conduct of Nestles, FSB, Marine and FTS in filing objections to the second amended plan from March 3 to March 14, 1988, conduct which patently belies their assertions now that the case was converted *ipso facto* by virtue of the February 18, 1988 Order. While the Court encourages cautious lawyering in furtherance of a client's interests, it cannot advocate the simultaneous assertion of contradictory positions which results in an unfair litigation advantage. *See, e.g., infra* note 5.

■ II. (a) The Court's oral ruling on March 15, 1988 converting Debtor's Chapter 13 case to a Chapter 7 "as of today" was not operative on utterance. The order of conversion was an appealable order and was not effective until entered on the docket by the Clerk. Fed.R.Bankr.P. 9021(a) provides that "[a] judgment is effective when entered as provided in rule 5003." Fed.R.Bankr.P. 5003 requires that "[t]he clerk shall keep a docket in each case under the Code and shall enter thereon each judgment, order, and activity in that case.... The entry of a judgment or order in a docket shall show the date the entry is made." Likewise, Fed.R.Bankr.P. 9001(7) instructs that " '[j]udgment' means any appealable order." Fed.R.Bankr.P. 9002(2) further directs that " '[a]ppeal' means an appeal as provided by 28 U.S.C. § 158", which would appear to include appeals as of right from final judgments, orders and decrees and those with leave of court from interlocutory orders and decrees. *See also* Fed.R.Bankr.P. 8001(a) and (b), 8003; Fed.R.Bankr.P. 9002(5) (" 'Judgment' includes *any* order appealable to an appellate court.") (emphasis added).[5]

If, however, appealability for purposes of the effectiveness of the order of conversion does hinge on finality, the disputed order of conversion was a final order. The Court notes that it is widely recognized that a single bankruptcy case can generate a number of final orders involving discrete disputes since the unique nature of bankruptcy procedure requires a "pragmatic approach to the question of finality." *Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1318 (9th Cir.1983) (citations omitted) (order for relief is an appealable order). "Certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Id.* at 1317 (synthesizing Circuit case holdings). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 444 *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5963, 6399; *Dubin v. Sec. and Exchange Comm'n (In re Johns–Manville Corp.)*, 824 F.2d 176, 179–180 (2d Cir.1987); *Smith v. Seaside Lanes (In re Moody)*, 825 F.2d 81, 85–88 (5th Cir.1987) (acknowledging flexible view of finality in bankruptcy as well as the availability of the collateral order doctrine under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and the general hardship exception announced in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), as used in ordinary civil litigation); 9 L. King, COLLIER ON BANKRUPTCY § 8001–06 (15th ed. 1988).

---

5. In seeking alternate relief under Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59(e), which governs the alteration or amendment of *judgments*, FTS undercuts ground (C) of its motion—"Rule 9021 of Bankruptcy Procedure, relied upon by Debtor to establish a written requirement for effectiveness of orders, applies only to judgments." FTS Motion, *supra*, at para. 17. It is incongruous to treat an order of dismissal as a judgment but not an order of conversion, as FTS appears to do. Additionally, FTS would have it both ways —in arguing that conversion occurred by virtue of the written Order dated February 17, 1988, the March 15, 1988 verbal ruling or a combination thereof.

While the strict rule of finality is somewhat less rigid and in bankruptcy, the inquiry still involves considerations of the impact on the assets of the debtor estate, judicial economy and economy for the parties in interest in the avoidance of a multiplicity of appeals if, *inter alia*, further fact-finding is directed upon remand. *See Bowers v. Connecticut Nat'l Bank*, 847 F.2d 1019, 1023 (2d Cir.1988); *LTV Corp. v. Farragher (In re Chateagay Corp.)*, 838 F.2d 59, 61–62 (2d Cir.1988) (quoting *Stable Mews Associates v. Togut (In re Stable Mews Associates)*, 778 F.2d 121 (2d Cir. 1985)); *Southeastern Sprinkler Co., Inc. v. Meyertech Corp. (In re Meyertech Corp)*, 831 F.2d 410, 414 (3d Cir.1987).

A test to determine the finality of a bankruptcy order is whether the particular controversy with which the order deals may be reviewed at a later time or whether effective review cannot await a subsequent disposition in bankruptcy court. *See In re Comer*, 716 F.2d 168, 172 (3d Cir.1983) (order lifting automatic stay against lien enforcement action final). Clearly, the order converting Debtor's case to a Chapter 7 liquidation was appealable since immediate review was necessary to protect Debtor's substantive rights to reorganize in Chapter 13 and to prevent irreparable harm through the potential loss of his property sold to good faith purchasers. *Cf. Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26 n. 4 (2d Cir.) (denial of relief from automatic stay in Chapter 13 was equivalent of permanent injunction and final order); *Maiorino v. Branford Sav. Bank*, 691 F.2d 89, 91 (2d Cir.1982) (order rejecting Chapter 13 plan interlocutory since automatic stay still in effect and petition not dismissed).

The order of conversion was an appealable final order for it held the potential to not merely dispose of an incidental procedural matter during the course of Debtor's bankruptcy proceedings but to transform a reorganization into a liquidation. *See Stewart v. Kutner (In re Kutner)*, 656 F.2d 1107 (5th Cir.1981) (order denying Chapter 13 trustee standing to move to convert to Chapter 7 under Code § 1307(c) not final since incidental matter connected with litigation and did not finally dispose of

entire case); *In re San Juan Hotel Corp.*, 59 B.R. 326, 328 (D.Puerto Rico 1986); *Guyther v. Hebb (In re Hebb)*, 53 B.R. 1003 (D.Md.1985) (order granting Chapter 13 debtor's request to convert case to a reorganization under Chapter 11 interlocutory).

Moreover, those cases concerning the effectiveness of orders entered on the record in open court in the context of contempt implicate concerns different from those presented here and, as such, are inapplicable. *See, e.g., Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Printree Ltd. v. Tribute Knits, Inc. (In re Printree, Ltd.)*, 40 B.R. 131 (Bankr.S.D.N.Y.1984) (citing to *In re LaMarre*, 494 F.2d 753 (6th Cir.1974) (construing 18 U.S.C. § 401(3), authorizing contempt power)). The Court is in complete agreement with the general language in *Maness v. Meyers, supra*, 419 U.S. at 458–459, 95 S.Ct. at 590–91, quoted by FTS in its memorandum of law, "that all orders and judgments of courts must be complied with promptly" to ensure "[t]he orderly and expeditious administration of justice." However, compliance with an order, and especially those issued during trial, and an order's effectiveness in the presence of a competing order embodying an arguably absolute right present distinguishable situations.

Thus, the Court's oral order of conversion on March 15, 1988 never became effective since, as an appealable order, it was never entered on the Debtor's case docket.

It is uncontroverted that no written order of conversion had been submitted, signed by the Court or entered onto the case docket by the Clerk when Debtor's counsel submitted the affidavit and proposed order of dismissal pursuant to Code § 1307(b) *in camera* on the afternoon of March 15, 1988. This state of affairs did not change when the Court signed the Order Of Dismissal on March 17, 1988 or when the Clerk entered that Order the following day. Hence, Code § 1307(b) was available to the Debtor when the order of dismissal was submitted, signed and entered since the case had not yet been converted and Debtor was still a Chapter 13 debtor.

■ (b) The Court finds that Debtor is eligible for Chapter 13 relief in that he is an individual who receives regular income from the operation of his sun tanning businesses and rent from his Central Square real property. Code §§ 109(e), 101(24). Moreover, the Court also finds that liquidating assets to furnish an alternate source of income to fund the plan is permissible within a Chapter 13, Code § 1322(b)(8). *See In re Hogue,* 78 B.R. 867 (Bankr.S.D. Ohio 1987).

■ This brings the Court to the real nub of the instant contested matter— whether the Debtor's right of dismissal pursuant to Code § 1307(b) is absolute. Aware of the decisional conflict surrounding this issue, the Court finds the better view to be that the presence of the word "shall" is dispositive in bestowing upon a debtor an absolute right to dismiss his Chapter 13 at any time, notwithstanding the presence of competing motions. *See* H.R.Rep. No. 595, 95th Cong. 1st Sess. 428, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5963, 6384; S.Rep. No. 989, 95th Cong. 1st Sess. 141, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5927; *Nash v. Kester (In re Nash),* 765 F.2d 1410, 1413 (9th Cir.1985); *In re Gillion,* 36 B.R. 901 (E.D.Ark.1983); *In re Keul,* 76 B.R. 79 (Bankr.E.D.Pa.1987); *In re Turiace,* 41 B.R. 466 (Bankr.D.Ore. 1984); *In re Zarowitz,* 36 B.R. 906 (Bankr. S.D.N.Y.1984); *In re Hearn,* 18 B.R. 605 (Bankr.D.Neb.1982). *See also* 5 L. King, COLLIER ON BANKRUPTCY sec. 1307.-01[3][i] (15th ed. 1987); *Contra In re Vieweg,* 80 B.R. 838 (Bankr.E.D.Mich.1987); *In re Tatsis,* 72 B.R. 908 (Bankr.W.D.N.C. 1987); *In re Gaudet,* 61 B.R. 349 (Bankr.D. R.I.1986); *In re Powers,* 48 B.R. 120 (Bankr.M.D.La.1985); *In re Jacobs,* 43 B.R. 971 (Bankr.E.D.N.Y.1984). This result comports with the Congressional intent behind enacting Chapter 13 and encouraging its use by making debt repayment under it accessible, "debtor-friendly" and totally voluntary, which included the right not to be exposed to liquidation. *See In re Gillion, supra,* 36 B.R. at 905.

Moreover, a coherent construction of Code § 1307, in particular the relationship of subsections (b) and (c) and the use of the precatory word "may" in the latter, reinforces the Court's mandatory reading of subsection (b). The Court also notes that Debtor's failure in this eight month Chapter 13 to make regular plan payments as mandated by Code § 1326 or his apparent inability to make himself available to his attorney for consultation purposes is not sufficient to establish such bad faith or abuse of the bankruptcy laws so as to invoke Code § 105(a) to block the exercise of his Code § 1307(b) entitlement. Additionally, Code § 109(g)(1) provides a check on such abuses, including those under Code § 1307(b), as here. *See In re Keul, supra,* 76 B.R. at 80. While this reading of Code § 1307(b) may be harsh in some cases, the Court is ever mindful of the separation of powers doctrine which guides the judiciary in interpreting the laws as enacted by the legislative branch. It is for Congress, and not the courts, to change the language of Code § 1307(b).

FTS' allusions with regard to the impropriety of the *ex parte* nature of the Debtor's motion and that it was never advised of Debtor's intention to do so prior or subsequent to the entry of the Order are unavailing. *See, e.g., In re Benediktsson,* 34 B.R. 349 (Bankr.W.D.Wa.1983). In the first place, because Code § 1307(b) sets out a debtor's absolute right, the Court lacks discretion with regard to such a motion, obviating the need for notice and/or hearing. "Where dismissal is granted pursuant to the debtor's request, the court is not even required to hold a hearing on notice prior to dismissal." B. WEINTRAUB & A. RESNICK, BANKRUPTCY LAW MANUAL § 9.11[1] at 9–24 (1986) (citing to Fed. R.Bankr.P. 1017(a)). *See also* 1987 Advisory Committee Note to Fed.R.Bankr.P. 1017 (dismissal pursuant to Code § 1307(b) is not automatically a contested matter and no hearing is required unless the court directs).

Moreover, Fed.R.Bankr.P. 1017(d) provides that "[c]onversion or dismissal pursuant to §§ 706(a), 1112(a), or *1307(b)* shall be on motion filed and served as required by

Rule 9013." (emphasis added). Fed.R. Bankr.P. 9013 specifically exempts *ex parte* motions from service but requires them to be in written form which it was here. Indeed, the repositioning of Code § 1307(b) by the 1987 Bankruptcy Rule amendments from the contested matters sphere of Fed.R.Bankr.P. 9014 to the generic motion category of Fed.R.Bank.P. 9013 lends support to the position that the right is absolute.

■ The Court finds the Clerk's action in sending out the notice of dismissal eleven days after its entry regrettable, and in contravention of the "immediately" language in Fed.R.Bankr.P. 9022(a). However, the same rule expressly states that "[l]ack of notice of the entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed except, as permitted in Rule 8002." The disputed Order of Dismissal was entered on March 18, 1988 and FTS filed the instant motion some twenty-one days later on April 8, 1988. The time to move under Fed.R.Civ.P. 59(e) and Fed.R.Bankr.P. 9023 runs from the entry of judgment and not from the time the parties receive notice, so that a party prevented from filing a timely motion in not receiving notice of the entry of judgment until after the running of the ten-day period, as here, is without recourse. *See Shults v. Henderson*, 110 F.R.D. 102, 104, 105 (W.D.N.Y.1986) (citing 6A J. Moore, J. Lucas & G. Grotheer, Jr., MOORE'S FEDERAL PRACTICE § 59.09[1] at 59–229 (2d ed. 1985)).

A motion filed more than ten days after entry of judgment to reconsider or vacate the judgment should be treated as brought under Fed.R.Civ.P. 60(b), even if designated otherwise. *See Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6 (2d Cir.1987). Only where a postjudgment motion is timely filed *and* calls into question the correctness of that judgment should it be treated as a motion under Fed.R.Civ.P. 59(e) and Fed.R.Bankr.P. 9023. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 41 (2d Cir.1982). Thus, FTS' motion to reconsider can only be considered under Fed.R.Bankr.P. 9024, and, hence, Fed.R.Civ.P. 60(b).

Fed.R.Civ.P. 60(b) allows "extraordinary judicial relief ... upon a showing of exceptional circumstances" and should be broadly construed to do "substantial justice". *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) (citations omitted); *In re Creed Bros., Inc.*, 70 B.R. 583, 586 (Bankr.S.D.N.Y.1987). However, final judgments should not be "lightly reopened" since the Rule is not a substitute for a timely appeal. *Nemaizer v. Baker, supra*, 793 F.2d at 61. "In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *See Kotlicky v. U.S. Fidelity & Guar. Co., supra*, 817 F.2d at 9 (citing to 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857 (1973)).

The Court concludes that relief from the Order of Dismissal entered on March 18, 1988 is not available to FTS under Fed.R. Civ.P. 60(b), as incorporated by Fed.R. Bankr.P. 9024. This is due to the absence in the instant matter of "mistake" by a party, his representatives or the court,[6] "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party" [7] or

---

**6.** There is a split in the authorities regarding whether "mistake" in Fed.R.Civ.P. 60(b)(1) encompasses judicial error. *See* 7 Moore's Federal Practice, *supra*, § 60.22[3] (2d ed. 1987); 11 C. Wright & A. Miller, *supra*, at § 2858 at 176–80. Assuming that it does, relief from judgment motion based on a court's legal error under Fed.R.Civ.P. 60(b)(1) must be brought within the normal time for taking an appeal. *See International Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir.1977) (citations omitted). "The interests of finality of judgments and judicial economy outweigh the value of giving a party a second bite of the apple by allowing a 60(b)

motion, after the appeal period has run, on the same legal theory that would have been asserted on appeal." *Pierce v. United Mine Workers of Am. Welfare*, 770 F.2d 449, 452 (6th Cir.1985).

**7.** FTS' allegation that the Debtor misled or committed fraud on the Court in neglecting to acknowledge contrary authority on the effectiveness of an oral order and the lack of an absolute right of dismissal under Code § 1307(b) is without merit. At most, this conduct, if true, might give rise to a breach of ethics. *See, e.g.,* MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7–23 (1981) ("... Where a lawyer knows of

**324**

"any other reason justifying relief from the operation of the judgment" not recognized by the preceding clauses and either stemming from extraordinary circumstances or the existence of a judgment which may work an extreme and undue hardship. *See Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754 (2d.Cir.1981). The Court notes that the record is silent on any exceptional circumstances and, by virtue of the dismissal of Debtor's Chapter 13 case, all of the creditors, including FTS, can now pursue their rights against the Debtor in state court and so are not foreclosed from seeking relief.[8]

By reason of the foregoing, it is hereby

ORDERED that FTS' motion under Fed. R.Bankr.P. 9023 and 9024 for reconsideration and amendment of or relief from the Court's March 17, 1988 Order of Dismissal pursuant to Code § 1307(b) is denied.

legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but, having made such disclosure, he may challenge its soundness in whole or in part."); *Id.* at DR 7–106(B) (1981) ("In presenting a matter to a tribunal, a lawyer shall disclose: (1) Legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client and which is not disclosed by opposing counsel."). The Court notes that contrary authority on both issues was put forth by FTS.

In addition, any inference that this Court relies wholly on papers submitted by counsel to adjudicate the disputes before it, including the instant motion, is erroneous. This would be in derogation of its obligation to fairly and accurately rule on each matter with a full command of the applicable law and facts.

**8.** While troubled at Debtor's counsel's noncompliance with its directive on March 17, 1988 to

give notice of the Order of Dismissal, the Court does not find this fatal to the effectiveness of the dismissal nor to be the kind of mistake or misconduct contemplated by Fed.R.Civ.P. 60(b).

FTS' assertion that the unsigned memorandum of law submitted by Debtor on March 17, 1988 in support of the affidavit and proposed order of dismissal was of no effect and should have been stricken pursuant to Fed.R.Bankr.P. 9011 is valid. Subsequent to being alerted by FTS' motion of this omission, Debtor's counsel did not tender his required signature and, to date, the memorandum remains unsigned. The Court's lack of reliance on this memorandum in granting the motion of dismissal, *cf. supra* note 7, was in compliance with Fed.R.Bankr.P. 9011(a). This result comports with the rule's function "as a tool to hold lawyers in check and to assist judges in overseeing the proper functioning of the judicial process … [and] an adjunct to the business of litigation, not the main event." *Featherston v. Goldman (In re D.C. Sullivan Co.)*, 843 F.2d 596, 599–600 (1st Cir.1988).