# STATE EX REL. WILLIAM C. WENDLAND v. PROBATE COURT OF ST. LOUIS COUNTY AND ANOTHER.[1]

March 15, 1946.

No. 34,135.

*Leslie S. High,* for appellant (relator below).

*J. A. A. Burnquist,* Attorney General, *Victor H. Gran,* Assistant Attorney General, and *Walter F. Dacey,* Assistant County Attor-

[1]Reported in 22 N. W. (2d) 448.

ney, for respondents (probate court of St. Louis county and J. K. Underhill as judge thereof).

YOUNGDAHL, JUSTICE.

Appeal from an order quashing a writ of *certiorari* and dismissing the proceedings in connection therewith.

On November 19, 1942, W. W. Lehmann, a resident of Duluth, filed a petition in the probate court of St. Louis county alleging the insanity of relator, William C. Wendland, and requesting his commitment as provided by the statutes. Wendland was taken into custody on November 23, 1942. After an examination by a board of examiners in the probate court on November 27, 1942, relator was found to be insane. On the same day judgment was entered adjudging him to be insane and a proper person for care and treatment, and ordering his commitment to the care and custody of the superintendent of the state hospital at Moose Lake. Relator had previously been committed by the St. Louis county probate court to the Fergus Falls state hospital on February 2, 1934.

On June 10, 1944, relator was paroled from the Moose Lake institution and placed in the custody of his nephew and has since that date been residing with him in California. On March 6, 1943, relator filed a petition for a writ of *habeas corpus* in the district court of Carlton county. After a hearing thereon, the court discharged the writ and in its memorandum attached to the order stated, among other things:

"The Probate Court had jurisdiction in the insanity proceedings and its records are regular and in conformity with the law. The judgment recited all the necessary jurisdictional facts and cannot be impeached or contradicted collaterally on a writ of habeas corpus.

"That habeas corpus lies only to determine the question of jurisdiction and the right of the custodian to hold the petitioner in custody. It is not available as a substitute for an appeal or for the correction of errors either in law or fact."

On November 1, 1944, relator filed a petition in the probate court requesting that the "proceeding [wherein he was adjudged insane and ordered committed to a state institution] be dismissed nunc pro tunc and ab initio and that your petitioner be declared wholly released, discharged and freed from any jurisdiction or control whatsoever of this court or of the State Hospital for the Insane at Moose Lake, Minnesota, * * *." Relator alleges in this petition, *inter alia,* that Lehmann, who filed the original petition to have him adjudged insane, was not a person entitled to file the same, and that relator was not a resident of Minnesota or present therein when the petition was filed. The probate court, after hearing, dismissed relator's petition on the ground that whatever questions were raised by him could and should have been raised at the time of the original hearing and that, if relator then felt aggrieved, the questions should have been reviewed in the manner provided by statute. On March 5, 1944, relator secured from the district court a writ of *certiorari* to review the action of the probate court. After a hearing thereon, the district court made its findings of fact and conclusions of law quashing the writ and dismissing the proceedings. In a memorandum attached to its order, the court exhaustively considered the questions raised, and, after disposing of several of the contentions made by relator, said:

"But, if it be assumed that all of relator's present contentions are sound, and supported by the facts, the situation is that each of his jurisdictional points turn upon issues of fact which could and should have been raised at the hearing in 1942; and were not. He was present himself at that hearing and, I take it, contends and contended then he was not insane. He was represented, not only by the county attorney, but by counsel of his own choice. His own sister and a doctor whose attendance he desired were present and participated. Perhaps the adjudication of his insanity was subject to appeal. (Cf. Minn. Stats., Sec. 525.79; Mason, Sec. 8992-184, with the statute considered in State ex rel. Broberg vs. State Board of Control, 183 Minn. 345, 236 N. W. 481.) If not, a record could

have been made permitting these issues to be considered in certiorari proceedings."

The principal question raised by this appeal is whether the district court erred in quashing the writ of *certiorari*. In view of our conclusion that that court properly dismissed the *certiorari* proceeding, we need not consider the question raised by the special appearance of the attorney general that service of the writ should have been made upon him.

Relator's petition was in effect a motion to vacate a judgment of the probate court adjudging him insane entered almost two years prior to the filing of his petition to dismiss the proceeding in probate court resulting in such judgment. The time has therefore expired within which a review might have been had of such proceeding. The statute authorizing the initiation of an insanity proceeding (Minn. St. 1941, § 525.751 [Mason St. 1940 Supp. § 8992-174]) provides:

"* * * Any reputable citizen may file in the court of the county of the patient's settlement or presence a petition for commitment setting forth the name and address of the patient and of his nearest relatives and the reasons for the application."

Relator contends that he was not a resident of St. Louis county nor present therein when the petition to have him adjudged insane and committed was filed, and that a proper person did not sign the petition pursuant to the statute. Therefore, it is his claim that the court had no jurisdiction to determine the matter.

We believe that the lower court was correct in holding that relator could not attack the judgment adjudging him insane and secure its vacation by his petition alleging judicial errors in the original insanity proceeding. As the court properly held, the question whether relator was a resident of the county or present therein when the petition to have him adjudged insane was filed or whether the statute was complied with in other respects were questions of fact, which could and should have been raised at the time of the original hearing. Then, if relator felt aggrieved, the

proceedings could have been reviewed in the manner provided by statute. State ex rel. Degen v. Freeman, 168 Minn. 374, 210 N. W. 14; Fridley v. Farmers & Mechanics Sav. Bank, 136 Minn. 333, 162 N. W. 454, L. R. A. 1917E, 544; Johnson v. Union Savings B. & T. Co. 196 Minn. 588, 266 N. W. 169; Wilkowske v. Lynch, 124 Minn. 492, 145 N. W. 378. Whether relator had a right of appeal or was limited to a review by *certiorari* or writ of error, we need not here decide. After judgment was entered, he made no effort to seek a review of the proceeding, either by appeal, writ of *certiorari,* or writ of error. His remedy was by way of review of the judicial errors claimed, rather than by a motion of this kind after the time for review had expired. To vacate the judgment now on the grounds asserted by relator would destroy orderly procedure as to appeals in this state. Johnson v. Union Savings B. & T. Co. *supra.* No objections were made at the hearing concerning the questions now raised. Relator was present and represented not only by the county attorney, but also by counsel of his own choice. His sister and a doctor, whose attendance he desired, were present and participated in the proceedings. He was therefore well represented by those who had an interest in him and who were competent to assert whatever objections were necessary to protect the record. The rule stated in 3 Dunnell, Dig. § 5120, is applicable here:

"* * * The power to vacate judgments, on motion, is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings. It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen. That a judgment is erroneous as a matter of law is ground for an appeal, writ of error, or certiorari, according to the case, but it is no ground for setting aside the judgment on motion."

The court properly quashed the writ of *certiorari* and dismissed the proceedings in connection therewith.

Affirmed.