WILLYS MOTORS, Inc., Plaintiff,

v.

NORTHWEST KAISER–WILLYS, Inc.,
Irving H. English, and William J.
Nickerson, Defendants.

Civ. No. 5149.

United States District Court
D. Minnesota, Fourth Division.

June 26, 1956.

See also D.C., 18 F.R.D. 473.

**470**

John L. Hannaford, Doherty, Rumble & Butler, St. Paul, Minn., for plaintiff.

William C. Kelly, Minneapolis, Minn., for defendants.

DEVITT, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment upon the first count of defendants' counterclaim. The principal issue is as to the constitutionality of Minnesota Laws 1955, Chapter 626.

The plaintiff, Willys Motors, Inc., an automobile manufacturer incorporated under the laws of the State of Pennsylvania, brought this action to recover on a series of promissory notes made by defendant, Northwest Kaiser-Willys, Inc., a Minnesota corporation, and endorsed by defendants English and Nickerson. The defendants have counterclaimed, alleging in the first count that, under date of August 27, 1953, the plaintiff and the corporate defendant entered into five contracts which granted the corporate defendant, Northwest Kaiser-Willys, Inc., the right to sell plaintiff's products at wholesale and at retail in an upper Midwest area. Incorporated into each of the contracts was an identical provision as to cancellation and termination. This provision is embodied in Section 22 of each agreement and reads:

> "It is agreed that either party shall have the right to cancel and terminate this Agreement at any time upon sixty (60) days written notice to the other party."

On March 15, 1955 a written notice of cancellation of each contract was served upon the corporate defendant. Cancellation was to be effective on or about May 15, 1955.

On April 20, 1955, the Minnesota Legislature enacted Laws 1955, Chapter 626 which, in so far as applicable here, reads:

> "It shall be unlawful for any manufacturer or distributor of motor vehicles, or for any officer, employee, agent or representative of such manufacturer or distributor:
>
> \* \* \* \* \*

> "(3) To cancel or refuse to renew the franchise of any retail dealer or any contractual arrangement between such manufacturer or distributor and the retail dealer without just cause. \* \* \*"

This provision has since been codified in Minnesota Statutes Annotated, § 168.27, Subd. 14(3). Violation of this provision is made a misdemeanor. M.S.A., § 168.-27, Subd. 12.

The corporate defendant alleges in its counterclaim that cancellation of the contracts by plaintiff was in violation of this law, and that as a result, the corporate defendant has suffered damages in the amount of $50,000 representing the loss of future profits.

Plaintiff moves for summary judgment on the first count of defendants' counterclaim, on the theory that cancellation was accomplished in accord with the terms of the contracts and that there is no genuine fact issue in dispute; that Laws of 1955, Chapter 626, was passed on April 20, 1955, 35 days after notice of cancellation was served and is inapplicable to this situation; and that if the law is applied here the statute would be given an invalid retroactive, and unconstitutional ex post facto effect; and that in any event, the law if applied to contracts existing on the date of its passage, is an impairment of the obligation of contract, prohibited by the United States Constitution, art. 1, § 10 and by the Minnesota Constitution, art. 1, § 11.

Considering plaintiff's first contention, it will be noted that only the notice of cancellation was given prior to enactment of the statute in question. By the terms of the contract, cancellation was not to become effective until 60 days after written notice. In this case cancellation was effective about 25 days after the passage of the statute. The prohibition of the statute is directed at *cancellation* without just cause, not notice of cancellation. There can be no occasion here to give the statute any retroactive or ex post facto effect. Plaintiff had suf-

ficient time after passage of the statute to comply with its terms by a show of just cause for cancellation, or, if that was impossible, to revoke the notice of cancellation. Plaintiff, instead, allowed the 60-day period to run with no further action on its part. Cancellation occurred at the end of this period, after the effective date of Laws 1955, Chapter 626.

Plaintiff's second contention raises a more difficult problem.

Section 22 of the contracts in question gave either party the unqualified right to cancel upon 60 days' notice with or without cause. Laws 1955, Chapter 626 imposes on the automobile manufacturer the duty of showing just cause for cancellation of the dealers' contracts. To this extent there has been an impairment of plaintiff's contractual obligation. But it does not follow that the impairment is in violation of the constitutional prohibition.

The place of the Contracts Clause in our constitutional framework has occupied the attention of the Supreme Court from the very beginning. The Court has recognized that certain state legislation, designed to alleviate social and economic difficulties, was subject to the objection that it impaired the *obligations of contracts* in existence at the time the legislation was enacted. But in order to preserve that which it thought to be meritorious legislation, the principle was devised and developed by the United States Supreme Court that the States' police power "is an exercise of the sovereign right of the government to protect the * * * general welfare of the people, and is paramount to any rights under contracts between individuals." Manigault v. Springs, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274. This principle was refined and applied in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413; Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086; Veix v. Sixth Ward Building & Loan Ass'n, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061; Faitoute Iron & Steel Co. v. City of Asbury Park, 316

U.S. 502, 62 S.Ct. 1129, 86 L.Ed. 1629; Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212. The States' police power has been extended not only to health, morals and safety, but to economic needs as well. Veix v. Sixth Ward Building & Loan Ass'n, supra. The court has said that: "the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." Home Building & Loan Ass'n v. Blaisdell, 290 U.S. at page 435, 54 S.Ct. at page 239.

█ That the economic interests of a state may justify the exercise of its protective power notwithstanding interference with contracts is a proposition now well established. See Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. at page 531, 69 S.Ct. 251.

█ There is one important proviso which must be met before legislation which impairs contractual obligations can be upheld; that is, the legislation in question must be enacted for a public, as contrasted with a private, purpose. See Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 438, 54 S.Ct. 231, 78 L.Ed. 413; Worthen Co. v. Thomas, 292 U.S. 426, 431, 432, 54 S.Ct. 816, 78 L.Ed. 1344; Worthen Co. ex rel. Board of Com'rs, etc. v. Kavanaugh, 295 U.S. 56, 60, 55 S.Ct. 555, 79 L.Ed. 1298; Western States Utilities Co. v. City of Waseca, 242 Minn. 302, 65 N.W.2d 255; compare Veix v. Sixth Ward Building & Loan Ass'n, supra, with Treigle v. Acme Homestead Ass'n, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575.

We have been given no definition of what a "public" or "private" purpose is, and probably no abstract definition would be administerable. Anti "yellow-dog" contract legislation was upheld in Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., supra; the legislative restriction on withdrawal of shares in building and loan associations was sustained in the Veix case, supra, and legislative restrictions on the professional conduct of dentists was sustained in Sem-

ler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086.

Laws 1955, Chapter 626 directly affects only manufacturers and dealers of automobiles, but it is reasonable to conclude that the statute has a public purpose when it attempts to alleviate an adverse economic condition directly affecting most of the 1,400 automobile dealers in the State of Minnesota and indirectly affecting thousands of others and a substantial segment of the economy.* A law which seeks "protection of a basic interest of society" will be upheld. Home Building & Loan Ass'n v. Blaisdell, 290 U.S. at page 445, 54 S.Ct. at page 242.

The Wisconsin Supreme Court in a recent opinion involving the constitutionality of a statute very similar to Laws 1955, Chapter 626, said:

"The fact that the persons to be benefited by this regulatory measure are confined to one class of our citizens, auto dealers, does not militate against the same being a legitimate exercise of the police power."

Kuhl Motor Co. v. Ford Motor Co., 270 Wis. 488, 71 N.W.2d 420, 427.

■ It is concluded that Laws 1955, Chapter 626 is a valid exercise of the police power of the State of Minnesota, and that it is not repugnant to the constitutional provisions prohibiting impairment of contracts contained in the United States Constitution, art. 1, § 10.

■■ The Supreme Court of Minnesota has not had occasion to pass on the constitutionality of this law under the Minnesota Constitution. Normally, a federal court should determine conflicts between state statutes and state constitutions only with reluctance and only when such a determination is necessary to the case before it. Porter v. Investors Syndicate, 287 U.S. 346, 53 S.Ct. 132, 77 L.Ed. 354. Such a determination is necessary in this case. The decision is not difficult, for the words of both the Federal Constitution and the State Constitution are essentially identical on this point and the Supreme Court of Minnesota has adopted essentially the same principles governing the relationship of the state police power and the prohibition against impairment of contracts. See Western States Utilities Co. v. City of Waseca, 242 Minn. 302, 308, 65 N.W.2d 255, 261. Of course, the Supreme Court of Minnesota remains the final arbiter of questions raised under the Constitution of Minnesota, Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151, and that court is not foreclosed by our decision here. Sanford v. Poe, 6 Cir., 69 F. 546, affirmed 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683. It is concluded that Laws 1955, Chapter 626, is valid under the Constitution of the State of Minnesota.

Since cancellation of a dealer's contract or franchise without just cause has been validly declared by the State of Minnesota to be contrary to the public policy of the state, the cancellation provision contained in Section 22 of the contracts in issue is construed to allow cancellation by the manufacturer only upon a showing of just cause.

■ Whether these contracts were cancelled without just cause remains a material fact issue, and plaintiff's motion for summary judgment must therefore be denied. It is.

---

* It is the fact that the use or threatened use of the arbitrary cancellation clause has been a source of irritation and economic fear among the automobile dealers of the country; see "The Automobile Marketing Practices Study," Report of the Subcommittee on Marketing Practices of the Committee on Interstate and Foreign Commerce, January 16, 1956, 84th Congress, 2d Session; "A Study of the Anti-Trust Laws," Staff Report of the Subcommittee on Antitrust and Monopoly of the Committee on the Judiciary, 84th Congress, 1st Session, pp. 13, 76–79.

Justice Black has observed that, as a result of the arbitrary cancellation clause, automobile dealers are " * * * economic dependents of the company whose cars they sell." Ford Motor Company v. U. S., 335 U.S. 303, 323, 69 S.Ct. 93, 103, 93 L.Ed. 24, dissenting opinions.