**DORSO TRAILER SALES, INC., Respondent,**

v.

**AMERICAN BODY AND TRAILER, INC., et al., Defendants,**

and

**Polar Manufacturing Company, defendant and third party plaintiff, Appellant.**

**POLAR TANK TRAILER, INC., et al., Defendants and Third Party Plaintiffs,**

v.

**AMERICAN RIM & BRAKE, INC., et al., Third Party Defendants,**

**Dorso Trailer Sales, Inc., third party defendant, Respondent.**

No. C9–85–386.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Review Denied Oct. 18, 1985.

David L. Graven, Holmes & Graven, Chtd., Minneapolis, for appellant.

James P. Miley, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from a judgment entered for Dorso Trailer Sales on its breach of contract claim against appellant Polar Manufacturing. The claim arose out of the termination by Polar of a dealership agreement with Dorso covering the American line of semi-trailers. The trial court ruled before trial that as a matter of law the agreement allowed termination only for cause. The jury found cause lacking, and assessed damages for lost profits. We reverse.

## FACTS

Dorso Trailer Sales is a dealer selling semi-truck trailers, with main offices in St. Paul and facilities in five neighboring states. American is a manufacturer of a broad line of trailers, with headquarters in Oklahoma City. American was purchased by appellant Polar Manufacturing, a Minnesota-based company, in July, 1979.

In 1953, Dorso, in the person of its founder Carmen T. Dorso, entered into a verbal dealership agreement with American, represented by its president, Robert King. This agreement made Dorso the first dealer of American trailers. This "handshake deal" was very simple in its terms: "I will build them, you go up and sell them."

In 1970, a written agreement was signed by both parties which included a termination clause, as follows:

It is understood and agreed this agreement is binding on both parties and subject to cancellation by either party after giving *30* days written notice.

In 1972, another written dealership agreement was signed, which also provided that either party could terminate the agreement by giving 30 days' notice.

Dorso's territory expanded over the years, and it became the exclusive American dealer in Minnesota, the Dakotas and Montana. Dorso sold some other vans and trailers, but only those which did not compete with American products. In 1976, at the urging of American, Dorso established a facility in Appleton, Wisconsin, involving an investment of about $600,000. It had little success, however, in penetrating the Wisconsin market.

As the first, and one of the largest American dealers, Dorso felt it had a "special relationship" with American, dating back to the 1953 "handshake deal." Dorso was excused from some arrangements imposed on other dealers, such as the furnishing of financial statements and factory financing of dealer inventory.

In November, 1976, a disagreement arose over general distributor mailings being sent to Dorso despite this relationship.

Dorso requested a rewritten dealership agreement, and continued to press American for a contract which would merely restate the terms of the old "handshake deal." American, however, sent its newly-drafted general distributor agreement, an 8-page document, which provided for termination by either party "with or without cause."

Dorso rejected this agreement, without specific reference to the termination provision, insisting generally on reinstatement of the 1953 "handshake deal." American sent back the two-page 1970 agreement, slightly revised, providing for cancellation upon 90 days' written notice. This was signed by both parties.

Appellant Polar Manufacturing began negotiations to purchase American in 1979. Before buying, Polar met with some of American's top dealers, seeking assurances that they would stay on with the company if the deal was made. Polar officials, including president Harry Dayton, met with the Dorsos in July, 1979.

Polar took over American in August, 1979. That fall there was a dramatic decline in the trailer market. Sales continued to decline the following three years.

In 1980, a disagreement arose over Dorso's sales performance on the American line of trailers. In May, 1981, Polar terminated the dealer agreement with Dorso by letter, giving 90 days' notice as required by the 1977 agreement, after Dorso declined to surrender the Wisconsin territory in lieu of termination. The parties then entered into discussions on reinstatement following Dorso's protest, but no agreement was reached.

The trial court, having ruled the agreement terminable only for cause, submitted the cause issue to the jury, which found good cause lacking and assessed damages for lost profits for three years preceding trial and future damages for the three years following trial.

## ISSUE

Did the trial court err in ruling that the dealership agreement was terminable only for cause?

## ANALYSIS

The trial court based its construction of the agreement in part on *Pickerign v. Pasco Marketing, Inc.*, 303 Minn. 442, 228 N.W.2d 562 (1975), and in part on its view that the law was moving away from the presumption favoring at-will termination of employment or dealership contracts. The trial court stated:

> In the area of long-standing business or employment relationships the direction of statutory and case law has been to reduce the quantum of arbitrariness with which such [a] relationship may be severed and to increase the extent to which the dominant party must show good cause for the termination.

> \*    \*    \*    \*    \*    \*

> In this case the plaintiff appears to have spent 28 years of work and investment to build a business in substantial reliance upon its flow of a product from defendants and its predecessors. Of necessity, that plaintiff would have declined to pursue the chance to sell the competing lines and would have made substantial cash investment in the facilities, equipment and the like.

> Under such circumstances, the court deems it unconscionable to construe the contract between the parties to permit the dominant party, in this case the defendant, to terminate the parties' relationship on the basis of arbitrary whim.

Unlike other types of agreements, employment contracts and sales agency and distribution agreements are ordinarily terminable at will if they do not contain express provisions for duration or termination. *Benson Coop. Creamery Ass'n v. First District Ass'n*, 276 Minn. 520, 151 N.W.2d 422 (1967); *cf., Miller v. O.B. McClintock Co.*, 210 Minn. 152, 297 N.W. 724 (1941) (patent license contract construed so as not to permit termination at will).

The *Pickerign* decision does not signal a movement away from the general rule of

terminability-at-will. The *Pickerign* court found a dealership agreement to be unconscionable because of the disparate bargaining power between a large oil distributorship and that of its dealer. The court here mentioned unconscionability, but did not rest its ruling on that theory. Even if unconscionability were the issue, Dorso has made no showing comparable to that in *Pickerign,* where the distributorship was not only the supplier but also the landlord of the dealer.

In *RJM Sales & Marketing v. Banfi Products Corp.,* 546 F.Supp. 1368 (D.Minn. 1982), the federal district court, applying Minnesota law, construed a contract provision nearly identical to the provision applicable here. The contract in *RJM* provided:

> Either party to this agreement may terminate it by giving thirty (30) days written notice to the other party.

546 F.Supp. at 1371. The court held that the contract was complete and unambiguous on the matter of termination and that it did not require cause. *Id.* at 1375. The court further held that such a clause was not unconscionable. *Id.*

We find the 1977 contract provision unambiguously allows termination of the agreement at the will of either party. The only restriction on termination is the 90 days' notice requirement. Where an employment or dealership agreement is silent as to whether it is terminable at-will or for-cause, Minnesota law construes it to be terminable at-will. *See McGinnis Piano and Organ Co. v. Yamaha International Corp.,* 480 F.2d 474, 479 (8th Cir.1973) (franchise agreement); *Benson Coop. Creamery Ass'n,* 276 Minn. at 526, 151 N.W.2d at 426 (marketing agreement).

Insofar as the trial court may have found that a termination-at-will provision was unconscionable, we do not agree.

A finding of unconscionability requires that one contracting party show that it had no "meaningful choice" but to accept the contract term as offered, and that the termination clause was "unreasonably favorable" to the other party. *RJM Sales & Marketing,* 546 F.Supp. at 1375. Dorso, by

its successful pressuring of American to replace the 1972 agreement with the 1977 contract, demonstrated considerable negotiating power as American's oldest and one of its best-selling dealers. Moreover, since the agreement could be terminated by either party upon the same terms, and Dorso, as a well-established dealer able to sell other trailer lines, had a conceivable interest in terminating, it was not "unreasonably favorable" to Polar or American. *Id.* The showing of unconscionability fell far short of that in *Pickerign,* where the oil company, the dealer's landlord as well as supplier, had the power to put the dealer completely out of business.

Since we reverse the trial court's ruling that the contract provided for termination only for cause, we need not address the other issues raised by appellant.

## DECISION

The trial court erred in ruling that the dealership agreement provided for termination only for cause. The 1977 dealership agreement is not ambiguous and allows termination at the will of either party. The provision was not unconscionable.

Reversed.