**DORSO TRAILER SALES, INC., Appellant,**

v.

**AMERICAN BODY AND TRAILER, INC., et al., Respondents.**

No. C6–90–1381.

Court of Appeals of Minnesota.

Dec. 31, 1990.

Review Granted March 15, 1991.

Christopher J. Dietzen, Andrew J. Mitchell, Sharon L. Brenna, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellant.

Edward M. Laine, Nancy L. Cameron, Oppenheimer, Wolff & Donnelly, St. Paul, for respondents.

Considered and decided by KALITOWSKI, P.J., FOLEY and NORTON, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant challenges the judgment of dismissal entered April 30, 1990, pursuant to the district court's order granting summary judgment in favor of respondent. Respondent filed a notice of review regarding two previous orders of the district court: (1) granting appellant's motion, pursuant to Minn.R.Civ.P. 60.02, to vacate a November 26, 1985, judgment; and (2) holding Minn.Stat. ch. 80E constitutional as applied to the case.

## FACTS

The basis of this protracted litigation is a contract dated April 29, 1977, between appellant, Dorso Trailer Sales, Inc. (Dorso), and American Body and Trailer, Inc. (American), predecessor of respondent, Polar Manufacturing Co. (Polar). The contract gave Dorso, a semi-truck trailer dealer, the right to sell American's products in Minnesota, North Dakota, South Dakota, Wisconsin, Montana and the Upper Peninsula of Michigan. The contract provided for cancellation by either party after 90 days' written notice.

In August 1979, Polar took over American. A disagreement subsequently arose over Dorso's sales performance. Polar terminated the 1977 agreement in May 1981, giving 90 days' notice as required by the contract. In December 1981, Dorso commenced a breach of contract action against Polar.

Before trial, the court ruled as a matter of law that under common law, the 1977 agreement allowed termination only for cause. Trial was held in March and April 1984. The jury found that Polar terminated the agreement without cause and awarded Dorso $321,302.00 in damages. Judgment was entered on February 15, 1985, for Dorso in the sum of $248,889.45 after set-off for Dorso's unpaid accounts with Polar. (For a more detailed discussion of the facts, see *Dorso Trailer Sales, Inc. v. American Body & Trailer, Inc.*, 372 N.W.2d 412 (Minn.App.1985) [hereinafter *Dorso I*]).

Polar appealed. This court reversed, holding that the trial court erred in ruling that the dealership agreement provided for termination only for cause. *Dorso I*, 372 N.W.2d at 415. The Minnesota Supreme Court denied review. The trial court vacated the February 15, 1985, judgment, and judgment was entered on November 26, 1985, for Polar in the amount of $110,946.24. This judgment was for the open account that had previously been asserted as a set-off to Dorso's judgment. Dorso did not contest the amount due on the open account and satisfied the judgment on December 3, 1985.

In May 1986, Dorso's counsel learned of the existence of Minnesota Statutes chapter 80E. Chapter 80E, which became effective in 1981, requires good cause to terminate a franchise agreement with a licensed new motor vehicle dealer. In pertinent part, chapter 80E provides:

> Notwithstanding the terms of any franchise agreement or waiver to the contrary, no manufacturer shall cancel or terminate any franchise relationship with a licensed new motor vehicle dealer unless the manufacturer has:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (c) Good cause for the cancellation or termination.

Minn.Stat. § 80E.06, subd. 1(c) (Supp.1981).

On May 13, 1986, Dorso moved, pursuant to Minn.R.Civ.P. 60.02(a) and (f), for relief

from the November 26, 1985, judgment. Dorso argued that relief was warranted by reason of mistake or excusable neglect in that chapter 80E was difficult to find because of the manner in which it was indexed in the statutes. Dorso further argued that relief was warranted under rule 60.02(f) to protect the integrity of the judicial process.

Subsequently, former counsel for Polar admitted that he had known of chapter 80E throughout the litigation but had not disclosed its existence to either Dorso's counsel, the trial court, the court of appeals or the supreme court. Polar's former counsel, by way of affidavit, stated that although he had been aware of chapter 80E, he had concluded that he had no ethical obligation to inform the courts of the statute because, in his opinion, chapter 80E would be unconstitutional as applied to the case.

After learning that Polar's former counsel had known of and failed to disclose the existence of chapter 80E to the courts, Dorso broadened the grounds for its motion for relief from the judgment to include a claim of "fraud * * * misrepresentation, or other misconduct of an adverse party" under rule 60.02(c). Dorso initiated a second action against Polar, specifically stating a claim under Minn.Stat. ch. 80E. In an order dated November 25, 1986, the court vacated the November 26, 1985, judgment pursuant to rule 60.02(a) and (f) and consolidated the two actions.

Polar petitioned for discretionary review of the November 25, 1986, order. The court of appeals denied Polar's petition, finding no compelling reason for review.

In June 1988, the parties brought cross-motions for summary judgment on the issue of whether application of chapter 80E would constitute an unconstitutional impairment of contract. The court granted Dorso's motion, ruling that chapter 80E as applied to the case violated neither the United States Constitution nor the Minnesota Constitution. The court of appeals denied Polar's petition for discretionary review of the order. The Minnesota Supreme Court denied Polar's petition for further review.

On December 14, 1989, Dorso moved for entry of judgment based on the April 10, 1984, special jury verdict. Polar moved for dismissal of the actions or, alternatively, for summary judgment or an order certifying questions to the court of appeals.

On March 30, 1990, the district court issued an order granting Polar's motion to dismiss and denying all other motions. In a memorandum accompanying the order, the court stated that it based its decision to dismiss the actions on two recent Minnesota cases, *Mattson v. Underwriters at Lloyds*, 414 N.W.2d 717 (Minn.1987), and *Sundberg v. Abbott*, 423 N.W.2d 686 (Minn. App.1988), *pet. for rev. denied* (Minn. June 29, 1988) [hereinafter *Sundberg II*]. The court found that *Mattson* and *Sundberg II* compelled dismissal of the cases on res judicata grounds.

Judgment of dismissal was entered on April 30, 1990, pursuant to the court's order. This appeal followed. Polar filed a notice of review, seeking review of the November 25, 1986, order granting Dorso's motion to vacate the November 26, 1985, judgment. Polar also seeks review of the September 23, 1988, order, which held Minn.Stat. ch. 80E constitutional as applied to the case.

### ISSUES

1. Did the district court abuse its discretion in vacating the November 26, 1985, judgment in Polar's favor?

2. Did the district court err as a matter of law in ordering dismissal of the consolidated actions on res judicata grounds despite the prior vacation of the judgment pursuant to Minn.R.Civ.P. 60.02?

3. Is Minnesota Statutes chapter 80E unconstitutional as applied to Polar?

### ANALYSIS

#### I.

Our review of a district court's decision to vacate a judgment pursuant to Minn.R. Civ.P. 60.02 is limited.

The decision to vacate a judgment [under rule 60.02] is largely within the trial court's discretion and that decision will not be reversed on appeal absent a clear abuse of discretion.

*Sand v. School Serv. Employees Union, Local 284,* 402 N.W.2d 183, 186 (Minn.App. 1987), *pet. for rev. denied* (Minn. Apr. 29, 1987).

Rule 60.02 of the Minnesota Rules of Civil Procedure, in pertinent part, provides:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment (other than a divorce decree), order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons: (a) Mistake, inadvertence, surprise, or excusable neglect;

\* \* \* \* \* \*

(c) Fraud \* \* \*, misrepresentation, or other misconduct of an adverse party;

\* \* \* \* \* \*

(f) Any other reason justifying relief from the operation of the judgment.

Minn.R.Civ.P. 60.02(a), (c), (f).

The district court based its order to vacate the November 26, 1985, judgment on Minn.R.Civ.P. 60.02(a) and (f). The court found vacation warranted under rule 60.-02(a) for two reasons: (1) Dorso's counsel's "mistake" in not finding and calling to the courts' attention Minn.Stat. ch. 80E; and (2) Polar's former counsel's "more grievous mistake" in not disclosing chapter 80E to any of the courts which heard the case. The court further found vacation warranted under rule 60.02(f), reasoning that

[i]t is important to preserve the integrity of the judicial system. A judicial system that would appear to overlook and not consider what may very well be controlling law in a case would not be perceived to be delivering the kind of justice our community expects.

The court declined specifically to use rule 60.02(c) as a basis for vacating the judgment. It noted:

The Court would rather find that [Polar's former] counsel made a serious mistake

in judgment rather than finding any intent to commit a fraud on the Court.

■ Polar initially argues that vacation of a final judgment after a jury trial and appeal is improper where there has been no finding of fraud or fraud on the court. We disagree. Rule 60.02 allows a court to relieve a party from "a final judgment (other than a divorce decree)" and to grant a "new trial" for the reasons specified in clauses (a) through (f). On its face, the rule permits relief from *any* final judgment (except a divorce decree) for *any* of the specified reasons. The grounds for vacation of a final judgment after trial and appeal are not limited to fraud by rule 60.02.

We address the parties' arguments concerning the application of rule 60.02(a), (c) and (f).

### A.  *Rule 60.02(a) and (c).*

The district court based its order vacating the November 26, 1985, judgment, in part, on rule 60.02(a), "mistake \* \* \* or excusable neglect." The court found "mistake" on the part of both parties' counsel.

#### 1.  Dorso's counsel's "mistake."

■ Dorso contends that its untimely discovery of chapter 80E was due to its attorney's "excusable neglect," *see* Minn.R. Civ.P. 60.02(a), and that this "excusable neglect" alone provided a sufficient basis for the district court to vacate the judgment. The Minnesota Supreme Court has stated that courts should relieve a party from the consequences of its attorney's neglect if the party: (1) possesses a reasonable claim on the merits; (2) has a reasonable excuse for the neglect; (3) acted with due diligence after notice of entry of judgment; and (4) shows that no substantial prejudice will result to the other party. *Conley v. Downing,* 321 N.W.2d 36, 40 (Minn.1982).

Dorso clearly "possesses a reasonable claim on the merits" under Minn.Stat. § 80E.06, subd. 1(c). Dorso's claim was endorsed by the jury. Dorso ultimately failed to prevail on its claim only because

this court held as matter of law that good cause was not required under the common law for termination of the 1977 contract. *See Dorso I*, 372 N.W.2d at 415. It is undisputed that Dorso "acted with due diligence." Dorso's motion to vacate was brought within the one year period after judgment, as specified by rule 60.02, and was brought almost immediately after Dorso's counsel discovered chapter 80E. "Substantial prejudice" to Polar is unlikely considering the exhaustive discovery that has already occurred in the matter. However, concerning the last requirement, failure to assert a claim or defense because of ignorance of the law is not considered "excusable neglect" within the meaning of rule 60.02(a).

In *Ayers v. Rudolph's, Inc.*, 392 N.W.2d 647 (Minn.App.1986), this court affirmed the trial court's denial of a rule 60.02 motion on the ground that appellant's counsel failed to raise an equitable estoppel defense to a motion for summary judgment. We endorsed the trial court's reasoning for denying the motion:

> [P]laintiff is asking the court to decide that an attorney's failure to raise a legal defense is excusable neglect. The legal policy effects of such a decision would be far-reaching. Such a use of Rule 60.02 would provide a litigant a second chance to argue a case, but on different legal theories which counsel failed to recognize or raise at the previous proceeding. The court is satisfied, and the case law indicates, that this is not the purpose of rule 60.02.

*Ayers*, 392 N.W.2d at 650.

While *Ayers* involved failure to raise a defense, courts in other jurisdictions have applied similar analyses in denying relief under rule 60.02 counterparts for failure to assert statutory or other claims.[1] For example, in *Schattman v. Texas Employment Comm'n*, 330 F.Supp. 328, 330 (W.D. Tex.1971), *rev'd on other grounds*, 459 F.2d 32 (5th Cir.1972), the federal district court rejected the argument that post-judgment discovery of arguably controlling statutory law warranted vacation of the judgment under Fed.R.Civ.P. 60(b). *Schattman* is consistent with the *Ayers* rationale. It is not the purpose of rule 60.02 or its federal and state counterparts to provide a litigant a second chance to argue a case on a different legal theory which counsel overlooked in a previous proceeding.

Contrary to Dorso's contention, its counsel's neglect alone would not be a sufficient basis for vacation of the judgment. Under *Ayers*, post-judgment discovery of applicable statutory law does not constitute "excusable neglect" within the meaning of rule 60.02. However, Dorso's counsel's mistake was only one of several factors considered by the district court in reaching its decision to vacate the judgment. In concluding that vacation was warranted, the court gave the most weight to the conduct of Polar's former counsel.

### 2. Polar's counsel's "grievous mistake."

After Dorso's post-appeal discovery of chapter 80E and its motion to reopen the judgment under rule 60.02 on grounds of "excusable neglect," former counsel for Polar admitted that he had known of chapter 80E throughout the litigation but had concluded he had no ethical obligation to disclose its existence to the courts. At issue is counsel's obligation under Minn. Code Prof.Resp. DR7–106(B), in force until

---

1. *See, e.g., United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir.), *cert. denied*, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971) ("ignorance of the law" not the sort of "excusable neglect" contemplated by Fed.R.Civ.P. 60(b)); *Benton v. Vinson, Elkins, Weems, & Searles*, 255 F.2d 299, 301 (2d Cir.), *cert. denied*, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958) (Fed.R.Civ.P. 60(b) relief not available where basis of motion was tardy discovery of statute of limitations); *Schattman v. Texas Employment Comm'n*, 330 F.Supp. 328, 330 (W.D.Tex.1971), *rev'd on other grounds*, 459 F.2d 32 (5th Cir.1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973) (relief under Fed.R.Civ.P. 60(b) not justified where only basis was newly discovered statutory law which through the party's mistake or inadvertence had not previously been raised as a defense); *Bendix Corp. v. Norberg*, 122 R.I. 155, 158, 404 A.2d 505, 506–07 (1979) (failure to consider applicability of statute not sufficient to warrant post-judgment relief under Super.R. Civ.P. 60(b)).

June 1985, and Minn.R.Prof. Conduct 3.3(a), adopted in June 1985.

DR7–106(B) provides:

In presenting a matter to a tribunal, a lawyer shall disclose:

(1) Legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client and which is not disclosed by opposing counsel.

Rule 3.3(a) is virtually identical:

(a) A lawyer shall not knowingly:

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

Dorso argues that no clearer violation of the ethical standard set forth in these provisions can be imagined than Polar's former counsel's conduct. Dorso notes that counsel, by his own admission, knew of "legal authority" (chapter 80E) in the "controlling jurisdiction" (Minnesota) which was "directly adverse" to his client's position and yet failed to disclose it. Polar counters Dorso's contention with alternative arguments: (1) counsel did not violate his ethical duty; and (2) even if counsel did violate his ethical duty, such violation did not warrant vacating the judgment.

■ Polar argues that an attorney's ethical obligation to disclose directly adverse legal authority does not impose the obligation to suggest "unpleaded claims or theories." Polar contends that chapter 80E provides for a claim and remedies entirely distinct from the breach of contract claim that Dorso brought in its first action. It cites provisions of chapter 80E concerning burden of proof, damages and attorney fees, Minn.Stat. §§ 80E.07, .09, .17, which it contends are very different from any theory alleged in Dorso's first complaint.

Chapter 80E does create some new rights in favor of a franchisee. However, counsel's failure to disclose the good cause requirement of chapter 80E, Minn.Stat. § 80E.06, subd. 1(c), *not* his failure to dis-

close other rights created by the chapter, clearly formed the basis for the district court's finding that counsel made a "grievous mistake." Moreover, Dorso's "theory" that good cause was required for termination of the contract was not "new;" it was pleaded in the original complaint and was at issue through all stages of the litigation.

Prior to the 1984 trial, Polar brought a motion *in limine* seeking to preclude evidence on the issue of whether there was good cause for termination of the contract. The court denied Polar's motion, ruling that Minnesota law required good cause for termination. After a jury determined that Polar did not have good cause to terminate the contract, Polar appealed to this court. Polar's primary argument on appeal in *Dorso I* was that, contrary to the trial court's ruling, Minnesota law did not require good cause for termination of the 1977 franchise agreement. Dorso proceeded under the theory that Minnesota law did require good cause.[2]

Minnesota Statutes section 80E.06, subd. 1(c), which requires good cause for termination of a franchise agreement and which was law in Minnesota at the time of Polar's motion *in limine* and its appeal, was clearly "directly adverse" to Polar's position. On these facts, we conclude that counsel had a duty to disclose the existence of section 80E.06, subd. 1(c).

■ Polar's alternative argument is that even if counsel did violate his duty to disclose, his violation did not warrant vacating the judgment. The Minnesota appellate courts have not yet had occasion to address the question of whether an attorney's violation of the duty to disclose adverse authority can give rise to vacation of a judgment under rule 60.02. We are aware of only one decision from other jurisdictions addressing this issue.

In *In re Rebeor*, 89 B.R. 314, 323–24 & n. 7 (N.D.N.Y.1988), a party seeking relief from an order dismissing the debtor's bankruptcy case argued that vacation of

2. The only issue addressed by this court in *Dorso I* was whether good cause was required to

terminate the contract. *See Dorso I,* 372 N.W.2d at 414.

the order was warranted under Fed.R. Civ.P. 60(b), as incorporated by Fed.R. Bankr.P. 9024, because the debtor allegedly misled or committed fraud on the court in "neglecting to acknowledge" authority contrary to its position. The United States Bankruptcy Court disagreed, determining that the debtor's conduct, if true, might at most give rise to a breach of ethics.

Polar argues that the *Rebeor* analysis is applicable on the present facts. We disagree and find *Rebeor* distinguishable. *Rebeor* is premised on a mere "failure to disclose" contrary authority. The record in the instant case indicates that Polar's former counsel not only failed to disclose the existence of the statute, but that he affirmatively misrepresented Minnesota law to the trial court, to this court, and to the supreme court.

In his memorandum in support of Polar's motion *in limine*, counsel wrote to the trial court that Minnesota law did not require good cause for termination of the franchise agreement. As is clear from counsel's affidavit, he knew at the time he wrote the *in limine* brief that Minn.Stat. § 80E.06, subd. 1(c), allowed termination only for good cause.

Counsel's arguments to this court were even more egregious. In Polar's appellate brief in *Dorso I*, counsel wrote:

> Polar claims on this appeal that the trial court's ruling [that the 1977 contract was terminable only for good cause] *stands Minnesota law on its head, is without basis in precedent or trend,* and is totally at variance with [a] highly persuasive and recent [federal district court case].

Appellant's brief at 9, *Dorso I*, 372 N.W.2d 412 (emphasis added).

Counsel implied in the brief that only the common law was applicable:

> [I]t stands without dispute that under the common law of Minnesota a distributor contract for an indefinite term is terminable by either party at will without cause upon the giving of reasonable notice. Thus, the presumption under the common law long has been that silence on the matter creates a contract termina-

ble at will without cause. Given the presumption of the common law, it follows that a clause, such as the one in the instant case, which clearly recites that the parties each have a mutual right to terminate and clearly specifies the required notice period * * * cannot, as the lower court in effect held, have the result of abrogating the common law rule and inserting, where the parties did not, an added and unwritten and unagreed to requirement that the termination be for [sic] only for cause.

*Id.* at 11–12 (citations omitted).

Further, counsel wrote:

> We submit that there is *absolutely no basis for the lower court's ruling that * * * the 1977 American–Dorso contract * * * is terminable only upon good cause.*

*Id.* at 16 (emphasis added).

The clearest misrepresentation by counsel is found in the conclusion of the brief:

> The trial court erred by ruling * * * that the 1977 contract * * * was terminable only for cause. * * * The trial court's ruling, if not reversed, has substantial implications for participants in this area of commercial law. * * * *If ninety days notice is to mean ninety days notice with cause, that result should come from the legislature. It has not.*

*Id.* at 40 (emphasis added).

Counsel continued affirmatively to misrepresent Minnesota law after the case proceeded to the supreme court on Dorso's petition for review of this court's decision. In response to Dorso's petition, Polar repeatedly asserted that the issue before the court was merely a matter of "common law," as if no statutory law was implicated.

Dorso argues that Polar's former counsel's conduct was so egregious as to warrant relief under Minn.R.Civ.P. 60.02(c) as "fraud * * *, misrepresentation or other misconduct of an adverse party" even though the district court made no specific finding of fraud. As support, Dorso cites *Halloran v. Blue & White Liberty Cab Co.,* 253 Minn. 436, 92 N.W.2d 794 (1958).

The plaintiff in *Halloran* was injured when struck by a taxicab. The cab was marked "Blue and White Liberty Cab." Plaintiff brought a negligence action against "Blue and White Liberty Cab Co., Inc." and obtained a judgment against it. After judgment was entered, plaintiff discovered that there was no such corporation. The cab that had struck plaintiff was owned by an individual doing business as "Blue and White Liberty Cab Company." Counsel retained by the cab owner never revealed throughout the trial that they were representing a fictitious defendant.

Plaintiff brought a new action against the cab driver and owner but did not prevail. Subsequently, plaintiff moved to amend the original judgment so as to establish the cab driver and owner as the true judgment debtors. The trial court denied the motion. The supreme court reversed, stating:

> Where a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair, the court has inherent power to vacate for fraud.

*Halloran* at 442, 92 N.W.2d at 798. The court did state that

> mere failure to disclose to an adversary, or to the court, matters which would defeat a party's claim * * * is not such extrinsic fraud as will justify or require a vacation of the judgment.

*Id.* at 442–43, 92 N.W.2d at 798.

From our review of the record in the instant case, we are convinced that counsel's conduct went far beyond a "mere failure to disclose * * * matters which would defeat [his client's] claim." Counsel made affirmative misrepresentations which "misled" the trial court, this court and the supreme court as to "material circumstances," i.e., as to the fact that Minnesota law, under chapter 80E, required good cause for termination of the franchise agreement.

Polar's former counsel's conduct was at least as misleading as that which the supreme court considered fraud in *Halloran*.

We do not consider *Halloran*'s precedential value in the present case diminished because the district court chose to describe counsel's conduct as a "grievous mistake" rather than making a specific finding of fraud. On the record before us we cannot say that the district court's decision to vacate the November 26, 1985, judgment on the grounds of Polar's counsel's "grievous mistake" was an abuse of discretion.

## B. *Rule 60.02(f)*.

■ The trial court found further support for vacating the judgment in Minn.R. Civ.P. 60.02(f). Rule 60.02(f) allows a court to vacate a judgment for "any reason * * * justifying relief" other than those enumerated in Minn.R.Civ.P. 60.02(a)–(e). The district court's rationale for applying rule 60.-02(f) was preservation of the integrity of the judicial system. The court stated that a judicial system that would appear to overlook controlling law "would not be perceived to be delivering the kind of justice our community expects."

Polar argues that the essence of the district court's holding is that a final judgment may be set aside to correct "judicial error" under rule 60.02(f). Polar cites *Anderson v. Anderson*, 288 Minn. 514, 519, 179 N.W.2d 718, 722 (1970) and *Arzt v. Arzt*, 361 N.W.2d 135, 136 (Minn.App.1985) for the proposition that rule 60.02(f) "is not intended to allow the district court to reopen or amend judgments merely because the court feels it has committed some judicial error." Polar further notes that it is reversible error for a trial court to provide relief for judicial error pursuant to rule 60.02, *see Anderson* at 519, 179 N.W.2d at 722, and that finality of judicial decisions requires that parties seek relief from judicial error through the appellate process. *See State ex rel. Wendland v. Probate Court*, 221 Minn. 333, 336, 22 N.W.2d 448, 449 (1946). We find Polar's reliance on *Anderson*, *Arzt*, and *Wendland* misplaced.

*Anderson* and *Arzt* do hold that rule 60.02(f) does not allow a court to reopen a judgment because of judicial error. However, Polar has mischaracterized as "judicial error" the district court's reason for

finding relief warranted under rule 60.02(f). The type of "judicial error" contemplated by the *Anderson, Arzt,* and *Wendland* courts is

> a mistaken or false conception or application of the law to the facts of a cause as will furnish ground for [appellate] review of the proceedings.

Black's Law Dictionary 487 (5th ed. 1979) ("error"). Potential damage to the integrity of the judicial system brought about by the circumstances of this case is not judicial error. We find the court's application of rule 60.02(f) to have been within its broad discretion.

In conclusion, we find the district court acted within its broad discretion in determining that the conduct of Polar's former counsel and the necessity to preserve the integrity of the judicial system warranted vacation of the November 26, 1985, judgment under rule 60.02.

## II.

█ The district court's March 1990 order granting Polar's motion to dismiss the consolidated actions was based on a purely legal analysis. Because the dismissal was decided as a matter of law, this court may conduct review under a de novo standard. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582 (Minn.1977) (conclusions of law do not bind this court); *Van De Loo v. Van De Loo,* 346 N.W.2d 173, 175 (Minn.App. 1984) ("The appellate courts need not * * * defer to the trial court in reviewing questions of law.").

The district court held that Dorso's consolidated actions were barred by the doctrine of res judicata because of this court's decision in *Dorso I,* 372 N.W.2d 412, and because Polar's counsel's violation of a rule of professional conduct could not revive an otherwise barred cause of action. The court based its decision on three Minnesota cases that were decided after the November 26, 1985, judgment had been vacated

under Minn.R.Civ.P. 60.02; *Mattson v. Underwriters at Lloyds,* 414 N.W.2d 717 (Minn.1987); *Sundberg v. Abbott,* 423 N.W.2d 686 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 29, 1988) [hereinafter *Sundberg II*]; and *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372 (Minn. 1989). We find the district court's reliance on these cases misplaced.

After reviewing *Mattson, Sundberg II* and *Airco,* we conclude that the district court overlooked fundamental distinctions that make these cases inapplicable to the present facts. The primary difference between *Mattson* and *Sundberg II* and the present case is that *Mattson* and *Sundberg II* did not involve judgments vacated under Minn.R.Civ.P. 60.02. In *Mattson,* the plaintiffs never moved to vacate the judgment that was entered after the court of appeals' decision. Rather, they simply returned to the trial court, argued that the case was not yet finally concluded, and moved for summary judgment on a theory they had never argued before the court of appeals. Likewise, the plaintiffs in *Sundberg II* never moved to vacate the judgment. Instead, they initiated a second action arising out of the same facts as the first.[3] Here, Dorso brought a rule 60.02 motion before the trial court, which weighed the need for finality against the wrong resulting from the circumstances of the case in exercising its broad discretion to vacate the judgment.

Polar apparently argues that *Mattson* and *Sundberg II* stand for the proposition that a rule 60.02 motion is never appropriate after an appellate reversal, especially after a reversal without remand. *Mattson* and *Sundberg II* do not even imply such a rule, as a vacation under rule 60.02 was not at issue in those cases. Further, rule 60.02, by its own terms, applies to *any* final judgment. We are aware of no decisions holding that a timely motion under rule 60.02 or its federal and state counterparts may not be brought to vacate a judgment entered after an appellate reversal.[4] Also,

---

3. We do find that *Sundberg II* compels dismissal of Dorso's second action. The second action arises out of the same facts as the first but specifies chapter 80E as statutory authority.

4. In dicta, the United States Supreme Court has indicated that Fed.R.Civ.P. 60(b) may be applied regardless of whether appellate review has taken place. *See Standard Oil of Calif. v. United*

we do not believe that the fact that Dorso satisfied Polar's judgment involving an uncontested set-off, precludes it from bringing a timely rule 60.02 motion to vacate the judgment which dismissed its claim.

In addition to misconstruing the *Mattson* and *Sundberg II* holdings, the district court erroneously concluded that *Airco* is dispositive. First, the district court premised applicability of *Airco* on an incorrect interpretation of the order, issued by a different judge, vacating the judgment under rule 60.02. In its memorandum accompanying the order of dismissal, the court wrote:

> [The order vacating the judgment pursuant to rule 60.02] was based on the fact that [Polar's] counsel was aware of * * * [chapter] 80E and that he did not indicate its existence to either the trial court, the Court of Appeals or the Minnesota Supreme Court.

The district court, in its memorandum, does not acknowledge that counsel's affirmative misrepresentations concerning Minnesota law and considerations under rule 60.02(f) led to the decision to vacate the judgment. Its entire analysis of the applicability of *Mattson, Sundberg II* and *Airco* is based on the mistaken premise that Polar's former counsel's violation of his ethical duty to disclose constituted the only ground for the vacation of the judgment under rule 60.02.

More importantly, *Airco* simply held that "[a] violation of the Rules of Professional Conduct cannot give rise to a private action against an attorney." *Airco,* 446 N.W.2d at 380. Dorso is not suing Polar's former counsel, nor is Dorso arguing that the ethical violation gives rise to any separate cause of action against Polar. Rather, Dorso is simply asserting that counsel's conduct was a sufficient ground to reopen the judgment entered after this court's *Dorso I* decision. *Airco* is thus inapposite.

We hold that the district court erred in concluding that *Mattson, Sundberg II* and *Airco* compel dismissal of the reopened first action. We, therefore, reverse the judgment of dismissal.

### III.

■ The district court held that Minn. Stat. ch. 80E as applied to the 1977 contract does not violate the contracts clauses of the United States and Minnesota constitutions. U.S. Const., art. I, § 10, cl. 1; Minn. Const., art. I, § 11. Polar argues that the court erred in making this ruling.

The United States Supreme Court and the Minnesota Supreme Court apply the same three-part test to determine whether there is an unconstitutional impairment of contract. The initial inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual obligation. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (citations omitted); *Jacobsen v. Anheuser–Busch, Inc.,* 392 N.W.2d 868, 872 (Minn.1986) (citing *Energy Reserves,* 459 U.S. at 410, 103 S.Ct. at 704), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 941, 93 L.Ed.2d 991 (1987). The severity of the impairment increases the level of scrutiny to which a court will subject the legislation. *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704; *Jacobsen,* 392 N.W.2d at 872. In determining the extent of the impairment, courts consider whether the industry involved has been regulated in the past. *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704; *Jacobsen,* 392 N.W.2d at 873.

Secondly, if the regulation does constitute a substantial impairment, the party urging its constitutionality must demonstrate a significant and legitimate public purpose behind the regulation. *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704; *Jacobsen,* 392 N.W.2d at 872. A significant and legitimate public purpose includes

---

*States,* 429 U.S. 17, 19, 97 S.Ct. 31, 32, 50 L.Ed.2d 21 (1976) ("The interest in finality [after appellate review] is no more impaired * * * than in any Rule 60(b) proceeding."). In *Standard Oil,* there had been an affirmance on appeal of the trial court's decision. With an af-

firmance, like a reversal without remand, nothing remained to be litigated below. *See Mattson,* 414 N.W.2d at 720. Despite the appellate decision, however, the Supreme Court indicated that a Fed.R.Civ.P. 60(b) motion was proper. *See Standard Oil,* 429 U.S. at 19, 97 S.Ct. at 32.

the remedying of a broad and general social or economic problem. *Energy Reserves,* 459 U.S. at 412, 103 S.Ct. at 704–05.

The final inquiry is whether the adjustment of the rights and responsibilities of the contracting parties is based on reasonable conditions and is of a character appropriate to the public purpose justifying adoption of the legislation. *Energy Reserves* at 412, 103 S.Ct. at 705; *Jacobsen,* 392 N.W.2d at 872. Unless the state itself is a party to the contract, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. *Energy Reserves,* 459 U.S. at 412–13, 103 S.Ct. at 705.

In analyzing whether the good cause requirement of chapter 80E creates a substantial impairment of the 1977 Dorso–American contract, we note that cause for termination of franchise agreements was the subject of past regulation by the State of Minnesota. Minnesota Laws 1955, ch. 626, § 1, which was codified at Minn.Stat. § 168.27, subd. 14(3), made it a misdemeanor for a manufacturer

> [t]o cancel or refuse to renew the franchise of any retail dealer or any contractual arrangement between such manufacturer or distributor and the retail dealer without just cause.

This statute remained in force until it was repealed by the passage of chapter 80E.1981 Minn.Laws ch. 59, § 20.

A civil claim based on the statute was at issue in *Willys Motors v. Northwest Kaiser–Willys,* 142 F.Supp. 469 (D.Minn.1956). The plaintiff, an automobile manufacturer, brought an action against a franchisee to recover on promissory notes made by the franchisee. The defendant franchisee counterclaimed, alleging that the plaintiff terminated its franchise agreement in violation of section 168.27. Plaintiff had, in accordance with the contract terms, given 60 days' notice to terminate the contract. On plaintiff's motion for summary judgment, the federal district court found section 168.27, subd. 14(3), constitutional as applied. While *Willys* is technically not controlling law as to the statute's validity under the Minnesota Constitution, *id.* at

472, we note that the Minnesota Supreme Court never issued a contrary ruling on the constitutionality of section 168.27, subd. 14(3).

The statute clearly put anyone entering in a franchise agreement in 1977 on notice that termination of the agreement without good cause would be a crime and thus against the public policy of the state. Further, the *Willys* case should have put a party to a franchise agreement on notice that civil liability was a potential consequence of violating the criminal statute. We therefore hold that the good cause requirement of chapter 80E, Minn.Stat. § 80E.06, subd. 1(c), does not create a substantial impairment of the contract within the meaning of *Energy Reserves* and *Jacobsen.*

Polar argues that several other provisions of chapter 80E, including the notice requirements set forth in section 80E.08 and the remedies set forth in section 80E.17, operate as a substantial impairment of contract. We need not address these arguments because even if other provisions create a substantial impairment, a significant and legitimate purpose behind the legislation has been demonstrated.

Chapter 80E was enacted pursuant to the state's police power to promote the economy, the public interest and public welfare of the state. *See* Minn.Stat. § 80E.01. The specific aim of the legislation was to regulate motor vehicle manufacturers, distributors and dealers doing business in Minnesota "in order to prevent fraud, impositions, and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." *Id.* We find these to be legitimate public purposes. *See Energy Reserves,* 459 U.S. at 411–12, 103 S.Ct. at 704–05. The legislature has determined that enactment of the provisions of chapter 80E are reasonably calculated to achieve these purposes. We defer to this legislative determination.

## DECISION

The district court did not abuse its discretion in vacating the November 26, 1985,

judgment pursuant to Minn.R.Civ.P. 60.-02(a) and (f).

The district court erred as a matter of law in ordering dismissal of Dorso's first action on res judicata grounds. The court's dismissal of Dorso's second action on res judicata grounds was proper.

Minnesota Statutes chapter 80E is not unconstitutional as applied to Polar.

Affirmed in part, reversed in part, and remanded.

FOLEY, Judge (dissenting).

I respectfully dissent. I support Judge Poritsky's grant of summary judgment to Polar. I believe the trial court should not have vacated Polar's judgment because of the doctrine of finality of judgments. I also believe Polar's judgment could not be vacated because, once it was satisfied, it ceased to exist. The question of subject matter jurisdiction was not raised by either party. That, however, is not controlling; lack of subject matter jurisdiction can be raised sua sponte by this court at any time.

*Finality of Judgments.* When this matter was originally before the trial court, the trial court found Polar could terminate the agreement only for cause and allowed the matter to go to a jury trial. The jury returned a verdict in favor of Dorso for $321,302. After a set-off for Dorso's unpaid accounts with Polar, judgment was entered in Dorso's favor for $248,889.45. On appeal from that judgment, in *Dorso I,* this court reversed the trial court's holding that Polar could not terminate the agreement without cause. *Dorso I,* 372 N.W.2d at 415. This court said:

> The trial court erred in ruling that the dealership agreement provided for termination only for cause. The 1977 dealership agreement is not ambiguous and allows termination at the will of either party. The provision is not unconscionable.
>
> *Reversed.*

*Id.* (emphasis added). In *Dorso I,* this court did not remand the case, it simply reversed it. The Minnesota Supreme Court denied review of *Dorso I* on October 18, 1985. The trial court then vacated the pre-appeal judgment in favor of Dorso, and entered judgment for Polar for $110,946.24. When the judgment for Polar was entered, there were no unresolved issues. The case was at an end except for Polar's judgment.

The judgment entered in favor of Polar should be accorded finality. *See Mattson v. Underwriters at Lloyds of London,* 414 N.W.2d 717, 720 (Minn.1987) (when a judgment is reversed there is nothing left to litigate, and the case is completely concluded).

*Satisfaction of Judgment.* The judgment in favor of Polar was satisfied in full by Dorso on December 3, 1985, long before Dorso's counsel asked the trial court for vacation. Once a judgment is satisfied, it ceases to exist. *Boulevard Del, Inc. v. Stillman,* 343 N.W.2d 50, 52 (Minn.App. 1984). It cannot be revived, so there is nothing to vacate. *Id.* The court cannot give what it does not have. *Id.* Therefore, the trial court did not have subject matter jurisdiction to vacate Polar's judgment. *Id.*

The supreme court limited the holding of *Boulevard Del* in *Jorissen v. Miller,* 399 N.W.2d 82, 84 (Minn.1987). *Jorissen,* however, is distinguishable on its facts and in any event applies only to conciliation court actions. Here the holding of *Boulevard Del* controls decision.

The claim that Polar's initial trial counsel misled the courts with respect to the existence of chapter 80E, if true, in my opinion would not allow revival of a fully satisfied judgment by Dorso. Any alleged misconduct of counsel is a matter for the Lawyers Professional Responsibility Board or a separate suit and does not revive a fully satisfied judgment.